Nancy Morgan RUNNELLS, Ind. and as Legal Guardian of David Morgan Firestone, Jr., Appellant,

v.

David Morgan FIRESTONE, Appellee.

No. B14–87–350–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 4, 1988.

Rehearing Denied March 3, 1988.

Eugene A. Cook, JoAnn Storey, Richard A. Sheehy, Houston, for appellant.

Robert J. Piro, Pamela E. George, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Nancy Morgan Runnells, plaintiff below, appeals from an order of the trial court which sustained the special appearance of appellee, David Morgan Firestone [hereinafter "Firestone"], her former husband. In two points of error she argues that because Texas may properly assert *in personam* jurisdiction over Firestone, the trial court erred in sustaining his special appearance and ordering her case dismissed. Firestone raises a cross-point and seeks damages pursuant to Tex.R.App. P. 84. We affirm the judgment of the trial court and deny Firestone's request.

Appellant filed suit individually and as legal guardian for David Morgan Firestone, Jr. [hereinafter "David"]. David is now 29 years old, has never been married, and has been adjudicated an incompetent since 1982. Appellant's Original Petition sounded in contract and tort. She alleged Texas jurisdiction by invoking the "doing business" clause of former article 2031b, now codified at Tex.Civ.Prac. & Rem.Code § 17.042 (Vernon 1986) [hereinafter "§ 17.-042"]. She based her contract claim on an alleged agreement by Mr. Firestone to pay one half of David's medical expenses. Her tort claim asserted that Firestone breached a statutory duty of support allegedly imposed by Tex.Prob.Code Ann. § 423 (Vernon 1980). She sought damages, punitive damages, attorney's fees, and requested the court to award her a substantial sum to be held in trust for David's medical expenses. After appellant served Firestone through the Texas Secretary of State, he filed a special appearance motion pursuant to Tex.R.Civ.P. 120a, which appellant opposed. The trial court then held a hearing at which both parties testified and presented evidence addressing the validity of a Texas court's asserting personal jurisdiction over Firestone.

Appellant has been a Texas resident since 1960. She moved here shortly after a 1960 Florida divorce decree terminated her marriage to Firestone and awarded her custody of their three children, including David. Appellant remarried in 1967. Firestone has never lived in Texas. He moved to Canada in 1966 and has been a Canadian citizen since 1971. It is undisputed that David is a Texas resident.

At the time of the special appearance hearing, David had resided in Maryland at the Sheppard and Enoch Pratt Hospital since June of 1984. David has had an extensive and steadily worsening history of treatment for mental disorders, which, his mother claims, began in childhood. He has been hospitalized at least fourteen times in Texas and several other states for treatment of those disorders. Appellant testified that she currently pays David's expenses that are not covered by insurance, that David may require treatment indefinitely, and that his current medical expenses, which amount to approximately $10,000 per month, will probably increase.

The trial court heard background testimony from Firestone concerning the terms of the divorce decree and agreements incident to the divorce decree, which required

him to pay appellant $65,000 per year for twenty-five years, or until the end of 1984, and also required him to provide medical insurance until that time.[1] Firestone stated he met the $65,000 per year obligation partly by setting up a trust with appellant as income beneficiary, and partly through his own funds. Appellant acknowledged that Firestone satisfied his annual $65,000 obligation from those two sources. Firestone stated the trust is now worth approximately $500,000 and that appellant continues to receive the income from the trust, which varies from $30,000 to $40,000 per year. Appellant conceded that Firestone sent David a $150 per month allowance.

During the hearing, appellant and Firestone vigorously disputed the outcome of a meeting which took place in Ontario, Canada in August 1983: appellant claimed that Firestone agreed at that time to pay one-half of David's medical expenses; Firestone denied any such agreement.

At the close of the hearing the trial court took the case under advisement. It later entered an order which granted Firestone's special appearance and dismissed the case without entering findings of fact or conclusions of law. Neither party requested findings of fact or conclusions of law pursuant to Tex.R.Civ.P. 296, although appellant did file a statement of facts in this court. As a result, we may infer all findings necessary to sustain the trial court's decision, provided they have evidentiary support in the record. *See In re W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984) (per curiam); *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980) (per curiam); *Washington v. Law*, 519 S.W.2d 953, 954 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.). In addition, we may consequently uphold the trial court's decision to deny jurisdiction on any

legal theory supported by the evidence. *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex. 1977); *Standard Savings Ass'n v. Cromwell*, 714 S.W.2d 49, 51 (Tex.App.—Houston [14th Dist.] 1986, no writ).

In her first point of error appellant argues that her non-resident former husband did business in Texas within the meaning of either the contract or tort subsections of § 17.042 of the Civil Practice & Remedies Code, § 17.042(1) & (2), respectively. She maintains that because he did business in Texas, this state may properly exercise long arm *in personam* jurisdiction over him, and that the trial court consequently erred in granting his special appearance and dismissing her case.

By entering a special appearance pursuant to Tex.R.Civ.P. 120a, a non-resident bears the burden of proof to show his lack of amenability to long-arm process, which means that he must show that Texas courts cannot validly obtain jurisdiction over him or his property pursuant to the Texas and federal constitutions and the applicable Texas statutes. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 202–03 (Tex.1985) (per curiam). The trial court's threshold inquiry is whether Texas law provides jurisdiction. *Texas Commerce Bank National Ass'n v. Interpol '80, Ltd.*, 703 S.W.2d 765, 768 (Tex.App. —Corpus Christi 1985, no writ). *See also, U–Anchor Advertising Co. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978) [where the Texas Supreme Court reiterated the three-prong test it propounded in *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex.1966), the first prong of which requires the non-resident to have purposefully performed some act in Texas][2].

1. Although the parties' divorce agreement was apparently admitted into evidence at trial, neither the Florida divorce decree nor any agreement incident to the decree has been designated as part of the record on appeal in this cause.

2. In *Hall v. Helicopteros Nacionales de Columbia, S.A.*, 638 S.W.2d 870, 872 (Tex.1982), *rev'd,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404

(1984) the Texas Supreme Court again reiterated the *O'Brien* rule as the controlling test. Only the second prong of the *O'Brien* test was at issue in *Hall.* We conclude that the United States Supreme Court's reversal of *Hall* does not remove the requirement that prong one of the test is a threshold jurisdictional requirement when a

■ We first address a sub-point to appellant's first point of error: her contention that Firestone did business in Texas within the meaning of § 17.042(1) by contracting with her to share the burden of David's medical expenses. In briefing this sub-point, appellant points to evidence supporting her contract jurisdictional allegations before the trial court, and claims that evidence mandates reversal.

Notwithstanding the lack of finding of fact and conclusions of law in the instant case, we rely on *Carbonit Houston, Inc. v. Exchange Bank,* 628 S.W.2d 826, 829 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.), where this court construed similarly phrased points of error as challenges to the sufficiency of the evidence to support the trial court's order. We conclude that appellant has also challenged the sufficiency of the evidence supporting the trial court's order in the instant case. This court's construction of the points of error here and in *Carbonit* is also consistent with Tex.R. App.P. 74(p) and *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 632–33 (Tex.1986) (opinion on rehearing), which require us to liberally construe points of error.

■ In a case such as this where there is no actual contract in evidence, and one party attests to a contractual agreement while the other vigorously denies any meeting of the minds, determination of the existence of a contract is a question of fact. *See Haws & Garrett General Contractors, Inc. v. Gorbett Bros. Welding Co.,* 480 S.W.2d 607, 610 (Tex.1972); *Industrial Disposal Supply Co., Inc. v. Perryman Bros. Trash Service, Inc.,* 664 S.W.2d 756, 765 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). Therefore, in order to determine whether long-arm jurisdiction pursuant to § 17.042(1) existed, it was necessary for the trial court to resolve the threshold fact issue of whether the parties entered into a contract. In briefing her point of error appellant does not argue that "no evidence" supports the trial court's decision

sion. Rather, she contends that her view of the evidence should control. We conclude that appellant's § 17.042(1) subpoint challenges the factual sufficiency of the evidence.

Pursuant to *Carbonit,* this court must review all jurisdictional evidence before the trial court, 628 S.W.2d at 829. *Carbonit* is thus in accord with *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951) (per curiam), which requires us to review factual sufficiency challenges by considering and weighing all the evidence, not only evidence which supports the trial court's findings, but also that which tends to contradict them. After evaluating the evidence, we may reverse the decision of the trial court only if its findings are so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate,* 244 S.W.2d at 661.

Although we may infer findings, *Motyka,* 610 S.W.2d at 736, and uphold the lower court's decision on any theory supported by the evidence, *Lassiter,* 559 S.W. 2d at 358, appellant may nonetheless challenge the trial court's implied findings on appeal, provided she raises sufficiency of the evidence points of error. *Motyka,* 610 S.W.2d at 735. As we indicated, we have construed appellant's § 17.042(1) sub-point as a challenge to the factual sufficiency of the evidence. We therefore conclude that her § 17.042(1) arguments challenging the trial court's decision to dismiss her contract-based jurisdictional claim are properly before this court, subject to the following standard of review.

■ We will review all the evidence pertinent to appellant's § 17.042(1), or contract-based, "doing business" jurisdictional allegations, *Carbonit,* 628 S.W.2d at 829. Because appellant failed to request findings of fact or conclusions of law, when we review that evidence we may infer findings necessary to sustain the trial court's decision to deny § 17.042(1) jurisdiction, *In re*

plaintiff asserting jurisdiction relies on specific subsections of § 17.042.

*W.E.R.*, 669 S.W.2d at 717. Also due to a lack of findings of fact or conclusions of law, we may uphold that decision on any legal theory which the evidence supports, *Lassiter*, 559 S.W.2d at 358. Lastly, we must uphold the trial court's decision absent manifest injustice. *In re King's Estate*, 244 S.W.2d at 661.

The central controversy at the special appearance evidentiary hearing was whether or not appellant and Firestone had come to an agreement in 1983 concerning David's mounting medical expenses. After reviewing the record we conclude the trial court impliedly determined there was no contract between appellant and her former husband on which to base § 17.042(1) jurisdiction.

As we have indicated above, the trial court heard testimony that Firestone's annual $65,000 alimony obligation, as well as his obligation to provide medical insurance, terminated at the end of 1984. Appellant refuted that testimony only by insisting that she and Firestone had come to a different agreement. The parties also strenuously disputed the nature of the series of checks Firestone sent appellant in 1983 and 1984. Appellant's version was that the checks constituted performance by Firestone of his promise to reimburse her for half of David's medical bills pursuant to an agreement of the parties which allegedly occurred when they met in August 1983. She repeatedly asserted the payments exceeded her ex-husband's $65,000 alimony obligation under the decree, yet offered no supporting documents. Appellant admitted that she added the "one-half" of medical expenses notations on ten of the check stubs she offered into evidence.[3]

According to Firestone, the checks were merely payment of his $65,000 annual alimony obligation and never exceeded that amount. He offered copies of his 1983 and 1984 income tax records, which characterized his payments to appellant as alimony, and which were admitted into evidence without objection. He argued the payments were not reimbursement because he never agreed to pay one-half of David's current or future medical expenses, or to reimburse appellant for half of her expenses when he met with appellant and discussed David's problems at the August, 1983 meeting. He denied that he and appellant had modified their 1960 divorce agreement. When asked why the notation "Re ½ of medical bills for David" was typed on a $2,578.00 check stub he sent appellant on July 16, 1984, Plaintiff's Exhibit 14, he responded that he was merely characterizing his alimony payment as medical payment so that appellant might be able to claim a tax deduction.

In evaluating the evidence pertinent to appellant's § 17.042(1) jurisdictional allegations, we have concluded the trial court impliedly determined that she and her husband never came to the agreement she alleged. We also conclude that the trial court impliedly found that although Firestone did send appellant several checks during 1983 and 1984, he sent them in compliance with the 1960 divorce decree and not a new agreement. With one exception, there is no evidence that Firestone made any payments beyond the term required by the divorce decree, *i.e.*, through 1984. Yet appellant acknowledged that Plaintiff's Exhibit Three, the one check Firestone sent her in 1985, related to payment for 1984, the year in which his obligations pursuant to the divorce decree ceased.

Appellant never disputed that Firestone's obligations pursuant to their divorce decree agreement terminated in 1984. Although there is some evidence that the sums Firestone sent appellant may have amounted to one-half of David's expenses in a given month, as in Plaintiff's Exhibit One, that evidence does not categorically establish an agreement to reimburse appellant indefinitely, as she contends. Appellant argued

---

3. The parties then stipulated that appellant's handwritten notes on the check stubs would not be considered part of the record.

that Firestone performed, and therefore ratified, their agreement. However, Plaintiff's Exhibit 16, a listing she made of medical expense disbursements and alleged reimbursements, do not establish that Firestone consistently reimbursed her. Moreover, because there is no evidence that Firestone paid appellant any money in 1985 that did not relate to 1984, we conclude the trial court impliedly found no performance of a *new* agreement by Firestone.

Also tending to defeat an agreement of the parties is a note appellant sent to Firestone on May 22, 1984, Defendant's Exhibit Four. In that note she reported that David was hospitalized at a Connecticut Hospital. Although appellant has repeatedly asserted that she and Firestone had a firm agreement that he would reimburse her for half of David's expenses, her note asks him how to "handle" the $7500 per month fees, adding that insurance had "run out." In the same note she indicated she would send Firestone information and brochures concerning the hospital. Yet appellant neither forwarded him the hospital's financial commitment agreement for his signature nor sent him a copy of that agreement, although she had signed it six days prior. (Defendant's Exhibit Five.). Appellant likewise failed to require Firestone to sign the financial responsibility agreement she executed in favor of the Enoch Pratt Hospital on June 13, 1984. (Defendant's Exhibit Six.). Defendant's Exhibits Five and Six both contain blanks for a co-signor's signature. Exhibit Five specifically requests a father's signature. Yet neither bears Firestone's signature.

The trial court impliedly found no basis for appellant's § 17.042(1) jurisdictional allegations because it found that no contract existed, having determined that Firestone never agreed to reimburse appellant indefinitely for one-half of David's medical expenses. *See Kyle v. Corey*, 585 S.W.2d 331, 333 (Tex.Civ.App.—Dallas 1979, no writ). We find the trial court's implied findings well supported in the record and conclude that Firestone met his burden to disprove of appellant's § 17.042(1) allegations. While the evidence before the trial court concerning appellant's contract allegations was often conflicting, only that court could resolve those conflicts and determine the weight to accord each party's testimony. *Harris County v. Hall*, 141 Tex. 388, 172 S.W.2d 691 (1943); *Carroll Instrument Co. v. B.W.B. Controls, Inc.*, 677 S.W.2d 654, 661 (Tex.App.—Houston [1st Dist.] 1984, no writ); *Belford v. Belford*, 682 S.W.2d 675, 677 (Tex.App.—Austin, 1984, no writ). Lastly, we are unable to state that the trial court's implied finding that no contract existed is manifestly unjust. *In re Kings Estate*, 244 S.W.2d 660.

 In reaching the foregoing conclusion we are well aware that a hearing on a special appearance motion, a trial court should not reach the merits of the case. *Portland Savings & Loan Ass'n v. Bernstein*, 716 S.W.2d 532, 535 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1200, 89 L.Ed.2d 313 (1986); *Arterbury v. American Bank & Trust Co.*, 553 S.W.2d 943, 948 (Tex.Civ.App.—Texarkana 1977, no writ). The *Bernstein* and *Arterbury* courts both construed the "tort" prong of former article 2031b in rejecting the requirement of a *prima facie* case and holding that a "purposeful act" in Texas is the only showing required to sustain long-arm jurisdiction. *Bernstein*, 716 S.W.2d at 535; *Arterbury*, 553 S.W.2d at 947. In actions brought pursuant to the contract prong of the long-arm statute, however, the *existence* of a contract is the purposeful act or fact on which jurisdiction must be based. Therefore, Texas courts have permitted non-residents to offer proof that no contract existed, notwithstanding the plaintiff's ultimate burden to prove the existence of the contract at the trial on the merits. *See Ross F. Meriwether & Associates v. Aulbach*, 686 S.W.2d 730, 732 (Tex. App.—San Antonio 1985, no writ); *Kyle*, 585 S.W.2d at 333. For example, in *Kyle*, which involved a written contract, unlike

the oral agreement alleged in the instant case, the court of appeals concluded the trial court impliedly found that no contract existed because it impliedly determined the parties had never finalized the contract at issue, 585 S.W.2d at 333. The court's implied finding that no contract existed is likewise proper in the instant case.

Appellant's § 17.042(1) sub-point challenging the trial court's granting Firestone's special appearance is overruled.

■ While the § 17.042(1) sub-point of appellant's first point of error addressed a fact issue, her § 17.042(2), or tort-based, sub-point raises an issue of law. She argues that Tex.Prob.Code Ann. § 423 establishes a legal duty in Firestone to support his son, and that his failure to meet that duty constitutes negligence *per se*. We disagree.

In addressing appellant's § 17.042(2) sub-point we will apply the following standard of review. Because appellant argues that § 423 of the Probate Code establishes a legal duty, she necessarily raises a question of law. *See Gray v. Baker & Taylor Drilling Co.*, 602 S.W.2d 64, 65 (Tex.App.—Amarillo 1980, writ ref'd n.r.e.) (opinion on rehearing). By granting Firestone's special appearance motion, the trial court impliedly determined that § 423 imposed no duty of support on Firestone as a matter of law. When a trial court rules as a matter of law, this court may freely review its conclusions. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.], writ ref'd n.r.e.), 699 S.W.2d 199 (Tex.1985) (per curiam); *Texas Commerce Bank v. Interpol*, 703 S.W.2d at 774.

We find no error in the trial court's implied conclusion that Tex.Prob.Code Ann. § 423 imposed no duty on Firestone and that consequently, appellant's § 17.042(2) jurisdictional allegations failed. Appellant relies on *dicta* in *Red v. Red*, 552 S.W.2d 90 (Tex.1977), where the Supreme Court of Texas affirmed a trial court's conclusion that it lacked jurisdiction pursuant to the Family Code to order a divorced father to resume child support payments when the possessory conservator of an adult incompetent failed to request modification prior to the child's eighteenth birthday. The *Red* court twice referred to § 423 of the Probate Code in recognizing the maintenance obligation of an incompetent's parents. 552 S.W.2d at 91, 95. In arguing that the majority opinion's result was too harsh, Justice Pope's dissenting opinion criticized the majority's construction of § 423, 552 S.W.2d at 98. In the dissent's view, § 423 merely authorized suits by the State for debts accrued for an incompetent's care. *Id.* We agree.

Section 423 applies "where an incompetent has no estate of his own." *Id.* It sets up a hierarchy of family financial responsibility for an incompetent's maintenance and is dependent on ability to pay. Section 423(b) requires the father *or* mother to maintain the incompetent. Moreover, § 424, the following section in the Probate Code, addresses apportionment of the expenses for an incompetent's confinement, and § 425 grants his county of residence a right of action for recovery of sums paid. After construing § 423 together with §§ 424 and 425, we find the dissenting opinion's construction of § 423 in *Red* persuasive.

We find the statute inapplicable to the case at hand for several reasons. First, there has been no showing that either Texas or any other state seeks reimbursement for funds expended for David's care. *See State v. Stone*, 290 S.W.2d 761 (Tex.Civ. App.—Beaumont 1954, writ ref'd n.r.e.) (construing a predecessor to § 423). Second, appellant failed to assert that David has "no estate of his own," which the statute apparently requires. Third, the statute establishes only *alternative* parental liability. We find no basis for the propositions that the statute establishes liability in tort or creates a right of action between parents. Lastly, appellant has not asserted that she is unable to pay David's medical expenses. She merely avers that they have become excessive.

■ The trial court impliedly rejected appellant's assertion that Firestone's failure to pay David's medical expenses amounted to negligence *per se* in violation of Tex. Prob. Code Ann. § 423 when it granted his special appearance and dismissed her case. We find that conclusion correct as a matter of law. Texas requires a showing of a "purposeful act" in order to sustain § 17.042(2) tort-based jurisdiction. *Bernstein*, 716 S.W.2d at 535; *Arterbury*, 553 S.W.2d at 947. Because the purposeful act appellant asserts does not constitute a tort under Texas law, we overrule the § 17.042(2), or tort-based, sub-point of her first point of error.

Pursuant to her second point of error, appellant argues that because exercise of *in personam* jurisdiction over Firestone does not offend traditional notions of fair play and substantial justice, the trial court erred in granting his special appearance and dismissing her case. Based on our disposition of appellant's first point of error, we find her second point moot.

■ As we indicated in our discussion of appellant's first point of error, the determination of whether Texas law permits jurisdiction is the threshold inquiry a trial must resolve when a party seeks to assert jurisdiction over a non-resident. *Texas Commerce Bank v. Interpol '80 Ltd.*, 703 S.W.2d at 768; *accord, U–Anchor Advertising Co.*, 553 S.W.2d at 762 (citing *O'Brien*, 399 S.W.2d at 342, which established a three-prong test for assertion of jurisdiction over a non-resident, the first prong of which requires a purposeful act in Texas). While appellant cites numerous cases in support of her due process contention, she overlooks a fundamental jurisdictional premise raised by her own pleadings. This is a specific jurisdiction case. *See Hall*, 466 U.S. at 414 n. 8. Appellant specifically invoked only the tort and contract "doing business" prongs of § 17.042(1) and (2) respectively. Those subsections required a showing of either a contractual or tortious purposeful act by Firestone on which to base Texas's assertion of jurisdic-

tion. *Arterbury*, 553 S.W.2d at 947; *O'Brien*, 399 S.W.2d at 342. We have concluded the trial court properly found she had failed to do either. On that basis alone, that court lacked jurisdiction. Therefore, discussion of whether its exercise would offend traditional notions of fair play and substantial justice, *O'Brien's* third prong, is moot.

Moreover, this is not a general jurisdiction case in which an appellant attempts to rely on a non-resident's numerous contacts with Texas on which to base its jurisdictional allegations. *See Hall*, 466 U.S. at 414 n. 9. *See also,* E. Carlson, *General Jurisdiction and the Exercise of In Personam Jurisdiction under the Texas Long–Arm Statute*, 28 S.Tex.L.Rev. 307, 309 (1986); J. Richardson, Hall v. Helicopteros: *Clarifying the Limits of Personal Jurisdiction*, 48 Tex.B.J. 651 (1985) (both articles distinguish specific and general jurisdiction). However, in phrasing her second point of error appellant argued that Firestone had "sufficient contacts" with Texas to satisfy due process requirements. To the extent she attempts to assert a general jurisdiction argument on appeal, we reject it. Because there are neither pleadings nor proof offered at the evidentiary hearing to support that contention, we may not consider it. Tex.R.App.P. 52(a). We overrule appellant's second point of error.

We have reviewed appellee Firestone's cross-point requesting damages pursuant to Tex.R.App.P. 84. On reviewing the record we find no basis for his assertion that appellant filed this appeal for delay and without sufficient cause. Consequently we overrule his cross-point of error.

The judgment of the trial court is affirmed.