## In the Matter of the ESTATE OF Donald JUDD.

### No. 08–99–00212–CV.

Court of Appeals of Texas, El Paso.

Dec. 21, 1999.

Rehearing Overruled Jan. 26, 2000.

---

Monty Kimball, Alpine, for Appellant.

John W. Vinson, Asst. Atty. Gen., Austin, Richard Munzinger, Carl Eugene Ryan, Eric Michael Brittain, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, P.C., El Paso, for Appellee.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

This appeal arises out of an unsuccessful challenge to personal jurisdiction in a declaratory judgment cause of action. For reasons set forth below, we reverse the order of the trial court and render judgment dismissing the declaratory judgment cause of action.

## I. SUMMARY OF THE EVIDENCE

Locksley/Shea Gallery, Inc., ("Gallery"), is a corporation organized under the laws of the State of Minnesota. Over the past thirty years, the Gallery acquired various works of art created by Mr. Donald Judd, decedent. During this period, Mr. Judd lived in New York. At various intervals, the Gallery loaned pieces of Mr. Judd's work owned by the Gallery to Mr. Judd for the purpose of presenting them for display at various exhibitions and museums. The Gallery agreed to allow Mr. Judd to store the borrowed works in his New York apartment under an oral agreement that they would be returned to the Gallery upon request. Without the Gallery's knowledge, Mr. Judd transported the art to Texas, where Mr. Judd subsequently passed away in 1994.

After Mr. Donald Judd's death in 1994, Flavin Judd, the executor of Mr. Donald Judd's estate, received several letters from Gordon Locksley ("Locksley"), president of the Gallery. In his first letter, dated June 23, 1997, Locksley explained the arrangement the Gallery had with Mr. Donald Judd regarding the borrowed pieces of art and requested that twelve works of art be returned to the Gallery. In a letter dated August 13, 1997, Flavin Judd responded to Locksley's letter. Flavin Judd described that he was the executor and, in accordance with his fiduciary duty, he must obtain documented proof of the Gallery's ownership of the art. In response, Locksley forwarded various documents suggesting the Gallery's ownership. After receiving no reply to his letter and documentation suggesting the Gallery's ownership in the works of art, Locksley, in letters dated December 24, 1997 and February 7, 1998, again requested the return of the art. Then, in a letter dated June 25, 1998, Flavin Judd responded to Locksley's demand by informing him that the Gallery has not produced sufficient indicia of ownership to allow him to turn over the pieces of art.

At some point after these communications were made, the Donald Judd estate acknowledged the Gallery's ownership of nine of the twelve pieces, and it returned

eight pieces. The title to the remaining three remains in dispute.

Rainer Judd and Flavin Judd, acting as independent co-executors of the estate of Mr. Judd, filed a petition seeking declaratory judgment as to the owner of the three works of art on October 9, 1998. The executors cited TEX. CIV. PRAC. & REM.CODE ANN. § 17.003 (Vernon 1997) as grounds for jurisdiction. Section 17.003 states:

> For the purpose of establishing title to property, settling a lien or encumbrance on property, or determining an estate, interest, lien, or encumbrance, a person who claims an interest in the property may sue another person who claims an adverse interest or a lien or encumbrance but resides outside this state, resides in an unknown place, or is a transient. The plaintiff is not required to have actual possession of the property.

*Id.* The Gallery then filed a special appearance on April 19, 1999, challenging personal jurisdiction. Specifically, the Gallery argued that with the exception of the various communications between it and the executors of the estate regarding the twelve works of art, it has never had any contacts with the State of Texas.

After a hearing on the issue, the trial court denied the special appearance. The Gallery then requested specific findings of fact and conclusions of law. In its findings of fact, the trial court noted (among other findings) that Appellant claimed ownership of the art in accordance with a supposed bailment arrangement. The court then concluded that personal jurisdiction over the Gallery was proper because "Locksley/Shea purposefully availed itself of the benefits and protections of Texas laws. Therefore, Locksley/Shea has sufficient minimum contacts to support in *personam* jurisdiction in this case. The exercise of jurisdiction over Locksley/Shea comports with fair play and substantial justice." The Gallery now brings this appeal.

## II. DISCUSSION

In Issue No. One, Appellant argues that the trial court erred in denying its special appearance because the Gallery lacks sufficient contacts with the State of Texas to support a finding that the exercise of jurisdiction over it comports with due process requirements. Appellee argues that *in rem* and *in personam* jurisdiction is proper as it comports with due process guarantees. We begin with a discussion of the traditional standard of review.

### A. Standard of Review

When a defendant challenges a court's exercise of personal jurisdiction through a special appearance, he carries the burden of negating all bases of personal jurisdiction. *See Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985); *Siskind v. Villa Found. For Educ., Inc.*, 642 S.W.2d 434, 438 (Tex.1982); *Nikolai v. Strate*, 922 S.W.2d 229, 236 (Tex. App.—Fort Worth 1996, writ denied); *Hayes v. Wissel*, 882 S.W.2d 97, 99 (Tex. App.—Fort Worth 1994, no writ). When a trial court overrules a special appearance, the defendant should request it to make findings of fact according to TEX.R. CIV. P. 296. *Runnells v. Firestone*, 746 S.W.2d 845, 849 (Tex.App.—Houston [14th Dist.] ), *writ denied*, 760 S.W.2d 240 (Tex.1988). Absent such findings, we view the trial court's judgment as impliedly finding all the necessary facts to support its judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990); *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984); *Runnells*, 746 S.W.2d at 848. Where a complete statement of facts appears in the record, however, these implied findings are not conclusive and an appellant may challenge the sufficiency of the evidence. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex.1989). Where such points are raised, the standard of review to be applied is the same as that to be applied in the review of jury findings or a trial court's findings of fact. *Id.*

When a personal jurisdictional question is reviewed, we review all the

evidence. *Nikolai*, 922 S.W.2d at 236; *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 632 (Tex.App.—Dallas 1993, writ denied). The correct standard of review of the evidence is a factual sufficiency review, not a de novo review. *Nikolai*, 922 S.W.2d at 236; *Hotel Partners*, 847 S.W.2d at 632; *NCNB Texas Nat'l Bank v. Anderson*, 812 S.W.2d 441, 443–44 (Tex.App.—San Antonio 1991, no writ). Thus, we may reverse the decision of the trial court only if its ruling is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951); *Runnells*, 746 S.W.2d at 849. In reviewing such a point of error, we must consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *Ames v. Ames*, 776 S.W.2d 154, 158–59 (Tex.1989), *cert. denied*, 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). So, considering the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt*, 159 Tex. 305, 305, 320 S.W.2d 815, 816 (1959); *In re King's Estate*, 244 S.W.2d at 661.

 If evidence supports the implied findings of fact, we must uphold the trial court's judgment on any legal theory supported by the evidence. *Worford*, 801 S.W.2d at 109; *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex.1987); *Runnells*, 746 S.W.2d at 848. This is so regardless of whether the trial court articulates the correct legal reason for the judgment. *Harrington v. Railroad Comm'n*, 375 S.W.2d 892, 895 (Tex.1964); *Marifarms Oil & Gas, Inc. v. Westhoff*, 802 S.W.2d 123, 125 (Tex.App.—Fort Worth 1991, no writ).

## B. The Texas Test for Jurisdiction over a Nonresident

 A Texas court may exercise jurisdiction over a nonresident if two conditions are met. First, the Texas long-arm statute must authorize the exercise of jurisdiction. Second, the exercise of jurisdiction must be consistent with federal and state constitutional guarantees of due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990) (citing TEX. CIV. PRAC. & REM.CODE ANN. § 17.041— § 17.069 (Vernon 1986)). The Texas long-arm statute permits the exercise of jurisdiction over those who "do business" in Texas. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). Although the statute lists certain acts which statutorily constitute doing business in Texas, it also provides that other acts may qualify as doing business in Texas. *See id.* Thus, "the broad language of the long-arm statute's doing business requirement allows the statute to reach as far as the federal constitution permits." *Schlobohm*, 784 S.W.2d at 357.

In *Schlobohm*, the Supreme Court set forth three specific elements which must be satisfied in order for Texas to exercise personal jurisdiction over a nonresident. They are:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

(2) The cause of action must arise from, or be connected with, such act or transaction. Even if the cause of action does not arise from a specific contact, jurisdiction may be exercised if the defendant's contacts with Texas are continuing and systematic.

(3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state

afforded the respective parties, and the basic equities of the situation.

*Id.* at 358 (citing *O'Brien v. Lanpar Co.,* 399 S.W.2d 340, 342 (Tex.1966)). These elements are designed to incorporate the due process guarantees that have evolved in several Supreme Court decisions.[1] *See id.* at 358. The first part of the second element contemplates personal jurisdiction, and the second part of it contemplates general jurisdiction. *See id.* at 358. "[T]hese provisions also apply to the determination of a state's exercise of *in rem* and *quasi in rem* jurisdiction." *Ramirez v. Lagunes,* 794 S.W.2d 501, 504 (Tex. App.—Corpus Christi 1990, no writ).

## C. Application

### 1. Was an act purposefully performed or a transaction consummated in the State of Texas?

██ Both parties to this appeal are in agreement that the Appellant mailed several demand letters to Appellee claiming ownership in the works of art. Thus, Appellant clearly purposefully established contact with Texas.

### 2. Did the cause of action arise from or is the cause of action connected with the mailing of letters of demand?

Because there is no evidence in the record which indicates that Appellant has con-

tinuous and systematic contacts to support a finding that Texas has general jurisdiction over Appellant, we must determine whether the cause of action arose from or is connected to Appellant's limited contacts with Texas.[2] This leads us to the focal point of this appeal. The precise issue that we must answer is whether a nonresident who sends demand letters to an executor in Texas requesting the return of property in which the nonresident claims an ownership interest has sufficient minimum contacts with Texas to satisfy the due process requirements discussed above when the effect of the demand letters is to trigger fiduciary duties on the part of the executor to search for and return the claimed property. Stated differently, if a nonresident sends demand letters to a resident (who may have a state-imposed obligation to search for and return the property) requesting the return of property, and the resident files a declaratory judgment action to determine ownership rights in the property claimed by the nonresident, did the declaratory judgment cause of action arise from or relate to the nonresident's contacts, i.e., demand letters, so as to satisfy the minimum contacts element of due process guarantees?

Although we have not located a case that addresses this issue in the context of demand letters sent to an executor of an estate for works of art, this issue has been

---

**1.** For a thorough discussion of the key Supreme Court decisions see *MacMorran v. Wood,* 960 S.W.2d 891 (Tex.App.—El Paso 1997, writ denied).

**2.** Appellee raised numerous objections to Appellant's affidavit in which Appellant asserted that the Gallery has no contacts with Texas other than the demand letters, and that the underlying dispute emerged from a bailment agreement that it had with Mr. Judd, the terms of which were negotiated and carried out wholly outside of Texas. Appellee argues that because the objections were sustained (see footnote three *infra* where we note that there are questions as to whether the objections were, in fact, sustained), this court should hold that Appellant has not negated all bases for jurisdiction. Appellant has, however, put forth arguments to negate a finding

that jurisdiction exists based on the letters and the location of the property, i.e., a lack of sufficient contacts, and Appellee has not put forth allegations upon which an alternative ground for jurisdiction may lie. *See Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 634 (Tex.App.—Dallas 1993, writ denied) (foreign defendant need only negate grounds for jurisdiction that arise from the plaintiff's factual allegations). Thus, even by not considering the objected to portions of the affidavit, we cannot conclude that Appellant has not negated a basis for jurisdiction because the record does not demonstrate such an alternative basis to negate. Although this court may affirm the trial court's conclusion based on any legal theory supported by the evidence, here, the only evidence of Appellant's contacts with Texas are the demand letters.

addressed in a number of other contexts, including patent infringements, tortious interference with contracts, claims for homeowners' fees, etc. Through these analogous situations, courts have developed a fairly uniform rule that demand letters sent to a resident by a nonresident which prompt a resident to file a declaratory judgment cause of action against the nonresident who is making the demands, does not satisfy the minimum contacts element of specific personal jurisdiction because the declaratory judgment cause of action does not realistically arise from or relate to the demand letters per se. Rather, the declaratory judgment action arises from whatever facts surround the formation of the underlying dispute. The following cases illustrate this principle.

In *Recycled Paper Products, Inc. v. Maine Line Co.*, No. 85 C 10042, 1986 WL 1962 (N.D.Ill. Feb.10, 1986), Maine Line Co. Inc., ("Maine"), a nonresident corporation, contracted with an artist for the production of greeting cards. Shortly after the contract was executed, Recycled Paper Products, Inc., ("Recycled"), a resident corporation, hired the artist in violation of the nonresident/artist contract. Maine contacted Recycled by phone and by mail explaining that the actions taken by Recycled may constitute tortious interference as well as other business torts. Recycled then sought a declaration that its activities did not subject it to liabilities. Maine filed a motion to dismiss based on its claim that the forum state lacked personal jurisdiction over it. The district court held that "[w]here a defendant's contact with [the forum state] is provoked by the unilateral act of the plaintiff it is not a voluntary submission to the jurisdiction of the State, and that contact is not alone sufficient to justify the exercise of long-arm jurisdiction." *Id.* at *3. The court also stated:

> [Maine] merely responded to what it believed was tortious activity by [Recycled] with a proposal to resolve the dispute short of litigation. Such an offer

does not constitute the transaction of any business in [the forum state] which gives rise to the cause of action for a declaration that [Recycled] did not tortiously interfere with [Maine's] contractual relationship with [the artist].

*Id.* at *3. Thus, when a resident responds to demand letters sent from a nonresident by filing a declaratory judgment, the mere demand letters are not sufficient contacts with the forum state to justify exercising personal jurisdiction over the nonresident. In other words, it is incorrect to classify the demands as contacts which gave rise to the declaratory judgment cause of action.

Similarly, in *Thousand Trails, Inc. v. Foxwood Hill Property Owners Assn., Inc.*, No. CIV.A.3:98–CV–2843–D, 1999 WL 172322 (N.D.Tex. March 22, 1999), Foxwood Hill Property Owners Association ("Association"), a South Carolina corporation, assessed property fees against a subsidiary of Thousand Trails, Inc., ("TTI"), which owned property in a South Carolina real estate development. TTI is incorporated in Texas. Association sent demand letters and bills to TTI for the amount it claims was due. TTI then filed a declaratory judgment cause of action in Texas. Association challenged personal jurisdiction. Noting that in order for Texas to exercise jurisdiction over Association, "[TTI] must establish that the Association undertook some activity in—or purposefully directed some act at—Texas, and that [TTI's] claims arise out of or result from those activities," the court determined that the demand letters "in no way relate to the merits of the underlying dispute." *Id.* at *2. Thus, the court determined that jurisdiction over Association is improper because the declaratory judgment cause of action did not arise from or relate to the demand letters sent by Association.

Also, in *Ham v. La Cienega Music Co.*, 4 F.3d 413 (5th Cir.1993), Besman, a nonresident music writer, wrote a demand letter to Ham, who had acquired rights to a song in which Besman claimed an ownership interest. Ham then filed a declarato-

ry judgment action. Besman challenged personal jurisdiction. Consistent with the reasoning of the cases cited above, the court stated:

> Besman's [demand letter], although it forms the basis for Ham's allegations about the existence of a live controversy, in no way relates to the merits of the copyright question and thus does not support personal jurisdiction in Texas. We conclude that the instant action does not arise from contacts of Besman ... with Texas.

*Id.* at 416. With this, the Fifth Circuit Court of Appeals clearly endorsed the rule that in making the determination of whether a defendant has sufficient minimum contacts with the forum state in a declaratory judgment cause of action, for personal jurisdiction to stand, the contacts that the nonresident has with the forum state must have given rise to the underlying dispute, and not merely have provided the incentive to seek a declaration of the parties' rights.

 The rule that has emerged from these cases has a clear application here. There is no evidence that Appellant has any contact with the State of Texas other than the demand letters it sent to Appellee. The demand letters clearly did not give rise to the underlying dispute over who owns the art. Rather, the purported bailment arrangement that Appellant had with Mr. Donald Judd gave rise to the underlying dispute. Appellants have stated that the facts surrounding the bailment arrangement occurred wholly outside of Texas.[3] Indeed, there is nothing in the record to suggest otherwise. Although the demand letters prompted Appellee to file a declaratory judgment cause of action to settle the ownership issue, as set forth

above, such is not sufficient to satisfy due process. Again, the focus of the minimum contacts analysis in declaratory judgment cases must remain on the facts which created the underlying dispute. Thus, the second element of the due process test is not met in this case.

 Appellee argues that a different result is warranted in this case because the demand letters triggered fiduciary duties imposed by Texas law from which Appellant derived a benefit. Appellee contends that by purposefully sending demand letters into Texas calling upon the executor of the estate to return its property, Appellant purposefully availed itself of the benefits and protections of Texas' laws, and therefore, personal jurisdiction over Appellant is proper. In making this argument Appellee misconstrues the manner in which the " 'purposeful availment' " element relates to specific jurisdiction. The mere fact that a nonresident was benefitted by the forum states laws is not, by itself, a sufficient basis for specific jurisdiction. The " 'purposeful availment' " concept guarantees that a foreign defendant will not be taken by surprise by the forum state's exercise of personal jurisdiction. *See MacMorran,* 960 S.W.2d at 895. "[T]his 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum *and the litigation results from the alleged injuries that 'arise out of or relate to' those activities.*" *Id.* at 895–96 (emphasis added) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528, 540–41 (1985)). Although Appellant may have benefitted from Appellee's status as executor by

---

**3.** Appellee objected to Appellant's affidavit testimony on various grounds. The trial court responded by including the following language in its order: "Petitioners objections to the affidavit of Gordon Locksley are granted, but only to the extent that the affidavit contains inadmissible hearsay, statements made inadmissible by Texas Rule of Evidence 601(b), conclusory allegations and those matters upon which: (1) the affiant is not compe-

tent to testify; and, (2) the affiant lacks personal knowledge." Essentially, this order states that the objections are sustained to the extent they should be sustained. Such a state of affairs gives this court no indication of which statements in Appellant's affidavit were not considered by the trial court (if any). Therefore, Appellee failed to obtain a ruling on his objections. Accordingly, we consider the affidavit in its entirety.

sending demand letters, such availment does not satisfy due process guarantees unless the cause of action arose from or is related to the demand letters. As discussed above, the declaratory judgment cause of action relates to the facts which gave rise to Appellant's ownership claims and not the mailing of the letters. Therefore, we cannot say that Appellant purposefully availed itself of the benefit of Texas' laws in the context of the specific jurisdiction/due process analysis.

Given the facts and circumstances of the case, we find that the second element of the personal jurisdiction test cannot be satisfied and we sustain Appellant's Issue No. One. Given our disposition of Issue No. One, we need not address Appellant's Issue No. Two regarding fair play and substantial justice.

Having found that the limited contacts, i.e., the mailing of a few demand letters requesting the return of his property, that Appellant has with the State of Texas neither relate to nor give rise to Appellee's declaratory judgment cause of action (which is an adjudication of the underlying dispute which was formed wholly outside of Texas), we find that the trial court erred in denying Appellant's challenge to personal jurisdiction. We reverse the order of the trial court and render judgment dismissing the declaratory judgment cause of action against Appellant.