Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





CURTIS L. MARSH,


 Appellant,


v.


SHARON MARSH,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-06-00165-CV



Appeal from


 160th District Court


of Dallas County, Texas


(TC # 05-09874)




O P I N I O N



 Curtis L. Marsh appeals from an order granting Sharon Marsh's special appearance and
dismissing the cause of action with prejudice to re-filing in Texas. Finding no error, we affirm.

FACTUAL SUMMARY


 Curtis Marsh, a Texas attorney, sued his stepmother, Sharon Marsh, for tortious interference
with business and contractual relationships, tortious interference with prospective business
relationships, slander and defamation, invasion of privacy, and intentional infliction of emotional
distress. All of the claims arise from Curtis' efforts to purchase an Illinois title company owned by
his father and Sharon's alleged interference with the purchase.

 Curtis was raised in Tuscola, Illinois but he has practiced law in Dallas, Texas since 1985. (1) 
His father, Rick Marsh, owns a Tuscola title business, Douglas County Abstract Company, Inc. The
title company has been in the Marsh family since the early 1900's. Sharon has worked for the
company since the 1970's. The record does not reflect when Sharon married Rick Marsh.

 Sometime in 2003, Rick telephoned Curtis and expressed a desire to retire in about a year. 
Rick wanted the title company to stay in the family and he offered to sell the business to Curtis for
$500,000. Curtis accepted, and he had several other conversations with his father about the purchase
and Curtis' planned relocation to Tuscola. Curtis intended to establish a law practice in Tuscola and
he was considering "taking over" the bench for a district judge who was retiring. During the summer
of 2004, Curtis and his family began making preparations to relocate and they planned to look for
a house during a Thanksgiving trip to Tuscola. 

 On September 21, 2004, Sharon telephoned Curtis' wife because Sharon had just learned that
Curtis had agreed to take over the title company and that they were planning on looking at houses
at Thanksgiving. Sharon was livid and she asked Jamie not to tell Curtis or Rick about their
conversation. Sharon attempted to discourage Jamie from moving to Tuscola. She also inquired
about the purchase price of the title company and their financial situation, including how much
Curtis earned in his law practice in Dallas. Sharon told Jamie that Rick had made the decision to
sell the business without her knowledge or consent and she would not sacrifice her standard of living
by allowing the business to be sold to Curtis. Finally, Sharon told Jamie that Curtis could not make
a living in Tuscola and they were not welcome there. Based on this conversation, Jamie told Curtis
that she would not move to Illinois. 

 Rick called Curtis later the same day and told him that Sharon had learned of his plans to sell
the business and because she objected, he could not sell it to Curtis for $500,000. Rick informed
Curtis that Sharon owned one-half of the business and he would want significantly more money if
and when he decided to sell it. According to Curtis, his father has not spoken to him since that day. 
 Sharon filed a special appearance supported by her affidavit. Curtis responded with his own
affidavit and Jamie's affidavit. The parties entered into a Rule 11 agreement that, for purposes of
the special appearance only, the defendant would assume that the substance of the conversation
between Jamie Marsh and Sharon Marsh which took place on September 21, 2005 (2) was true as
alleged in plaintiff's first amended petition and in Jamie's affidavit. (3) The docket sheet reflects that
on March 9, 2006, the trial court conducted a hearing on the special appearance during which Curtis
appeared in person and Sharon's attorney appeared by telephone. The appellate record does not
include a transcription of the hearing. Presumably, the hearing was non-evidentiary and the trial
court considered only the evidence filed with the clerk. See Michiana Easy Livin' Country v. Holten,
168 S.W.3d 777, 782-83 (Tex. 2005). Our presumption is supported by the trial court's order on the
special appearance which indicates that the court considered Sharon's special appearance, brief and
affidavit offered in support of her special appearance, the affidavits of Jamie and Curtis Marsh,
Curtis' response to the special appearance, the pleadings, and the arguments and authorities of
counsel. The court granted the special appearance and dismissed the suit on April 11, 2006. Curtis
filed a timely notice of appeal. 

SPECIAL APPEARANCE


 In his sole issue for review, Curtis challenges the order granting the special appearance and
dismissing his suit.

Standard of Review


 The plaintiff bears the initial burden of pleading sufficient allegations to bring a non-resident
defendant within the personal jurisdiction of a Texas court. BMC Software Belgium, N.V. v.
Marchand, 83 S.W.3d 789, 793 (Tex. 2002). The nonresident defendant then assumes the burden
of negating all bases of jurisdiction in those allegations. Id.

 Whether a trial court has personal jurisdiction over a defendant is a question of law, which
we review de novo. Id. at 794. (4) However, the trial court frequently must resolve questions of fact
before deciding the question of jurisdiction. Id. If a trial court enters an order denying a special
appearance, and the trial court issues findings of fact and conclusions of law, the appellant may
challenge the fact findings on legal and factual sufficiency grounds. Id. When, as here, the trial
court does not issue findings of facts and conclusions of law with its special appearance ruling, all
fact findings necessary to support the judgment and supported by the evidence are implied. Id. at
795.

Waiver of Special Appearance


 We first consider Curtis' argument that Sharon waived her special appearance by (1) failing
to verify her special appearance as required by Rule 120a, and (2) by setting her special exceptions
for hearing on December 12, 2005 prior to a hearing on the special appearance. Sharon filed an
unsworn special appearance on October 14, 2005. On October 31, 2005, she filed her affidavit
which, among other things, verified the special appearance previously filed by her attorney. Rule
120a(1) of the Rules of Civil Procedure requires that a special appearance be made by sworn motion
but it also provides that it may be amended to cure any defect. Tex.R.Civ.P. 120a(1). As permitted
by Rule 120a(1), Sharon corrected the defect in the original special appearance by verifying it. This
portion of Curtis' complaint is without merit.

 With respect to the second waiver argument, Sharon asserts that Curtis has misrepresented
the facts because he is aware that the special appearance, not special exceptions, were set for a
hearing on December 12, 2005. Sharon's attorney stated in a letter to Curtis that special exceptions
were set for a hearing on December 12, 2005. However, the trial court's docket sheet reflects that
Sharon's special appearance, not her special exceptions, was set for a hearing on December 12, 2005
and it was re-set for a later date. Other than the apparently erroneous letter written by Sharon's
attorney, there is no evidence in the record supporting Curtis' assertion of waiver. Furthermore,
Curtis has raised the issue in a single sentence and he has not provided any citation to authority. 
Rule 38.1(h) of the Texas Rules of Appellate Procedure provides that an appellant's brief "must
contain a clear and concise argument for the contentions made, with appropriate citations to
authorities and to the record." Tex.R.App.P. 38.1(h). Failure to cite authority or provide substantive
analysis waives an issue on appeal. See Federal Sign v. Texas Southern University, 951 S.W.2d 401,
410 (Tex. 1997); Leyva v. Leyva, 960 S.W.2d 732, 734 (Tex.App.--El Paso 1997, no writ). 
Accordingly, we find that Curtis has waived the issue.

Jurisdiction Over Nonresident Defendants


 Texas courts may assert in personam jurisdiction over a nonresident if (1) the Texas long-arm
statute (5) authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with
federal and state constitutional due-process guarantees. Moki Mac River Expeditions v. Drugg, 221
S.W.3d 569, 574 (Tex. 2007); Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990). The long-arm statute permits Texas courts to exercise jurisdiction over nonresident defendants that do business
in Texas, and the statute contains a non-exclusive list of activities that constitute "doing business." 
Tex.Civ. Prac. & Rem.Code Ann. §17.042 (Vernon 1997). Pertinent to this case, a nonresident
does business in Texas if the nonresident commits a tort in whole or in part in the state. 
Tex.Civ.Prac. & Rem.Code Ann. §17.042(2). Curtis' pleadings assert that Sharon committed torts
in Texas. 

 Section 17.042's broad language extends Texas courts' personal jurisdiction "as far as the
federal constitutional requirements of due process will permit." BMC Software, 83 S.W.3d at 795,
quoting U-Anchor Adver., Inc. v. Burt, 553 S.W.2d 760, 762 (Tex. 1977). Consequently, we
consider whether it is consistent with federal constitutional requirements of due process for Texas
courts to assert in personam jurisdiction over Sharon. See Guardian Royal Exchange Assurance,
Ltd. v. English China Clays, 815 S.W.2d 223, 226 (Tex. 1991). We rely on both federal and Texas
decisions in determining whether a nonresident defendant has met its burden to negate all bases of
jurisdiction. BMC Software, 83 S.W.3d at 795.

 The United States Supreme Court divides the due process requirements into two parts: 
(1) whether the nonresident defendant has purposely established minimum contacts with the forum
state, and if so, (2) whether the exercise of jurisdiction comports with traditional notions of fair play
and substantial justice. BMC Software, 83 S.W.3d at 795, citing International Shoe Co. v.
Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Minimum contacts are sufficient
for personal jurisdiction when the nonresident defendant purposefully avails itself of the privilege
of conducting activities within the forum state, thus invoking the benefits and protections of its laws. 
Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). We consider
several factors in making the purposeful availment determination. Michiana Easy Livin' Country,
Inc., 168 S.W.3d at 784-85. First, only the defendant's contacts with the forum are relevant, and we
do not consider the unilateral activity of another party or a third person. Id. at 785. Second, the
contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. Id. Third, the
defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. Id.

 Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to
either specific jurisdiction or general jurisdiction. BMC Software, 83 S.W.3d at 795-96, citing
Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14, 104 S.Ct. 1868, 80 
L.Ed.2d 404 (1984); Guardian Royal, 815 S.W.2d at 226. For a court to exercise specific
jurisdiction over a nonresident defendant, two requirements must be met: (1) the defendant's
contacts with the forum must be purposeful, and (2) the cause of action must arise from or relate to
those contacts. American Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex.
2002). The minimum contacts analysis for specific jurisdiction focuses on the relationship among
the defendant, the forum, and the litigation. Helicopteros, 466 U.S. at 414, 104 S.Ct. 1868; 
Michiana Easy Livin' Country, Inc., 168 S.W.3d at 790. In contrast, general jurisdiction is present
when a defendant's contacts in a forum are continuous and systematic so that the forum may exercise
personal jurisdiction over the defendant even if the cause of action did not arise from or relate to
activities conducted within the forum state. BMC Software, 83 S.W.3d at 796.

Specific Jurisdiction


 Curtis asserts that specific jurisdiction exists because Sharon deliberately committed acts
which were purposefully directed to Texas and his claims arise from that conduct. He also argues
that Sharon could reasonably anticipate having to defend herself in a Texas court as a result of her
actions. The Supreme Court has expressly rejected the argument that jurisdiction exists solely
because a defendant directed a tort at Texas. Michiana, 168 S.W.3d at 791-92. Instead, we must
examine whether the defendant's contacts with the forum are purposeful and whether the cause of
action arises from or relates to those contacts. See American Type, 83 S.W.3d at 806.

 In contending that jurisdiction exists, Curtis argues that his father and the title company have
done business in Texas. The contacts of Rick Marsh and the title company are irrelevant to the issue
of specific jurisdiction. It is only the defendant's contacts with the forum that count: purposeful
availment ensures that a defendant will not be haled into a jurisdiction solely as a result of the
unilateral activity of another party or a third person. Michiana, 168 S.W.3d at 785. Thus, we will
consider only Sharon's contacts with Texas.

 Sharon is not a Texas resident and she does not own any property in here. Other than
attending the wedding of Curtis and Jamie in 1990 and visiting with them during the Christmas
holidays on two occasions since 1999 or 2000, Sharon has not been to Texas. She did not discuss
the title company or its potential sale during any of these visits. In the past, Sharon made social
telephone calls to Curtis and his wife approximately three or four times each year and she
corresponded by mail once or twice a year. Other than the single phone call detailed in Curtis'
pleadings and Jamie's affidavit, Sharon has not had any discussions in Texas about the prospect of
Curtis purchasing the title company and none of her alleged liability arises from or is related to an
activity conducted within the forum. Therefore, the only issue in deciding the specific jurisdiction
issue is whether by making this single telephone call Sharon purposefully availed herself of the
privileges and benefits of conducting activities within Texas, thus invoking the benefits and
protections of its laws. See Michiana, 168 S.W.3d at 784.

 Curtis has directed our attention to only one case in which a single phone call made by the
nonresident defendant to the forum state was found sufficient to establish specific jurisdiction. See
Brown v. Flowers Industries, Inc., 688 F.2d 328 (5th Cir. 1982). There, Jerry Kralis, who is an
Indiana resident and the president of an Indiana corporation, telephoned the U.S. Attorney in Oxford,
Mississippi and made allegedly defamatory statements about a Mississippi resident and a Mississippi
corporation, which caused them to lose the chance to obtain a $4 million loan from the Farmers
Home Administration. The plaintiffs filed suit in Mississippi against Kralis, Kralis Brothers Foods,
and Flowers Industries, Inc., a Delaware corporation with its principal place of business in Georgia,
alleging that the defendants conspired to and did cause them economic and other injuries. The
district court held that the single contact was insufficient under the due process clause to subject the
defendants to in personam jurisdiction but the Fifth Circuit disagreed. The Fifth Circuit drew a
distinction between a negligent tort and an intentional one, and found that Kralis could easily have
foreseen that the injurious effect of the alleged intentional tort would fall in Mississippi. Brown, 688
F.2d at 333-34. The Supreme Court distinguished Brown in Michiana on the ground that the
defendant's conduct was much more extensive and was aimed at getting extensive business in or
from the forum state. Id. at 789-90. Michiana expressly disapproved of the Brown analysis because
this kind of foreseeability is not a sufficient benchmark for exercising jurisdiction. Michiana, 168
S.W.3d at 788-89. The court went on to note that it had expressly rejected jurisdiction based solely
upon the effects or consequences of an alleged conspiracy in the forum state. Id. at 789. It is the
defendant's conduct and connection with the forum that are critical. Id. Given the Supreme Court's
express rejection of the analysis employed in Brown, we will not apply it here.

 In support of his assertion that specific jurisdiction exists, Curtis also cites Schexnayder v.
Daniels, 187 S.W.3d 238 (Tex.App.--Texarkana 2006, pet. dism'd w.o.j.), Calder v. Jones, 465 U.S.
783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), Wright v. Sage Engineering, Inc., 137 S.W.3d 238
(Tex.App.--Houston [1st Dist.] 2004, pet. denied), Moki Mac River Expeditions v. Drugg,
No. 05-03-00051-CV, 2004 WL 100389 (Tex.App.--Dallas Jan. 22, 2004), reversed by 221 S.W.3d
569 (Tex. 2007), and Boissiere v. Nova Capital, LLC, 106 S.W.3d 897 (Tex.App.--Dallas 2003, no
pet.). None of these cases holds that specific jurisdiction arose from a single telephone call. Further,
the Texas Supreme Court reversed the Dallas Court of Appeals' decision in Moki Mac after
Appellant filed his brief, and it disapproved of Boissiere in Michiana.

 Despite Curtis' allegation that Sharon committed various torts, in part through the telephone
call to Jamie, this single contact does not evidence the "purposeful availment" necessary for finding
specific jurisdiction. Because we do not find purposeful availment or minimum contacts, it is
unnecessary to address the second prong of the due process inquiry, that is, whether the exercise of
jurisdiction comports with traditional notions of fair play and substantial justice. The trial court did
not err by impliedly concluding that Sharon negated specific jurisdiction.

General Jurisdiction


 General jurisdiction exists when a defendant's contacts in a forum are continuous and
systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause
of action did not arise from or relate to activities conducted within the forum state. BMC Software,
83 S.W.3d at 796. Under general jurisdiction standards, the cause of action need not arise from or
relate to the activities conducted within the forum state by the nonresident defendant, but the
minimum contacts analysis becomes more demanding; the contacts must be substantial. See BMC
Software, 83 S.W.3d at 797.

 Curtis contends that general jurisdiction exists in this case because, in addition to the
evidence that she had traveled to Texas for family visits and been in contact with Curtis and his
family, Sharon had in the previous three or four years sought legal advice from him regarding her
contemplated purchase of a residence near Lake Barkley and Eddyville, Kentucky. Sharon sent
Curtis a check in the amount of $1,000 or $1,500 for legal fees. 

 Sharon's social trips to Texas and her telephone calls to the Marsh family in Dallas are
random and occasional rather than being continuous and systematic. The evidence in the record
reflects that Sharon has visited the state only a few times in the fourteen year period before the
commission of the alleged torts and she has called Curtis and his family only once or twice a year. 
She has also corresponded with the family on a once or twice yearly basis. These contacts do not
constitute the type of continuous and systematic contacts necessary to subject a nonresident to the
state's jurisdiction. The fact that Sharon telephoned Curtis in the previous three or four years to
obtain legal advice related to the purchase of real property in Kentucky does not change the analysis. 
The record does not reflect that the contact was continuous or systematic. Further, contracting with
a Texas resident is not by itself sufficient to subject a nonresident defendant to jurisdiction in Texas. 
See Experimental Aircraft Association, Inc. v. Doctor, 76 S.W.3d 496, 507-08 (Tex.App.--Houston
[14th Dist.] 2002, no pet.); Magnolia Gas Co. v. Knight Equip. & Mfg. Corp., 994 S.W.2d 684, 691
(Tex.App.--San Antonio 1998, no pet.). Given that we do not find purposeful availment, we need
not address the second prong of the due process inquiry. After reviewing the record, we conclude
that Sharon negated all bases of jurisdiction. We overrule the sole issue and affirm the trial court's
order granting the special appearance and dismissing Curtis' suit.



August 16, 2007 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.

1. The facts pertaining to the events which led to Curtis filing suit against Sharon are taken from Curtis'
pleadings and the affidavits of Curtis and his wife, Jamie Marsh.
2. Although the Rule 11 agreement recited the date as September 21, 2005, the pleadings and Jamie's affidavit
state the conversation took place on September 21, 2004. 
3. In her affidavit, Sharon disputed Jamie's description of the conversation. 
4. BMC Software impliedly overruled our decision in Tuscano v. Osterberg, 82 S.W.3d 457 (Tex.App.--El Paso
2002, no pet.). In Tuscano, we overruled In re Estate of Judd, 8 S.W.3d 436 (Tex.App.--El Paso 1999, no pet.) and held
that the standard of review of a trial court's ruling on a special appearance is legal sufficiency. The Supreme Court cited
In re Estate of Judd with approval in BMC Software, 83 S.W.3d at 794.
5. Tex.Civ. Prac.&Rem.Code Ann. §§ 17.041-.045 (Vernon 1997 and Vernon Supp. 2006).