08-17-00229-CV

ACCEPTED
08-17-00229-CV
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
5/21/2018 11:53 PM
DENISE PACHECO
CLERK

IN THE COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS
5/21/2018 11:53:56 PM
DENISE PACHECO
Clerk

NO. 08-17-00229-CV

**EJ MADISON, LLC.**

**v.**

**PRO-TECH DIESEL, INC.**

_____

Appealed from the 205TH Judicial District Court
of El Paso County, Texas

_____

**BRIEF OF APPELLANT**
_____

Troy C. Brown
Texas Bar No. 00783735
300 E. Main
10th Floor, Suite 100
El Paso, Texas 79901
Tel. 915-543-9669
Fax 888-922-3353
troy@tcblegal.com
Attorney for Appellant

**ORAL ARGUMENT NOT REQUESTED**

**IDENTITIES OF PARTIES AND COUNSEL**

| | |
|---|---|
| **Appellant** | **Attorneys for Appellant** |
| EJ Madison, LLC | Troy C. Brown |
| | 300 E. Main |
| | 10th Floor, Suite 1000 |
| | El Paso, Texas 79901 |
| | Tel. 915-543-9669 |
| | Fax 888-922-3353 |
| | troy@tcblegal.com |
| | |
| **Appellee** | **Attorney for Appellee** |
| Pro-Tech Diesel, Inc. | Mannie Kalman |
| | Mounce, Green, Myers, Safi, |
| | Paxson & Galatzan, P.C. |
| | 1214 Montana Avenue |
| | El Paso, TX  79901 |
| | mkalman@manniekalman.com |

**Additional parties in trial court
(not parties on appeal)**

None

**Trial Court Judge:**
Hon. Guadalupe Rivera
205TH Judicial District Court
El Paso County, Texas

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL ........................................................i

TABLE OF CONTENTS.................................................................. ii

INDEX OF AUTHORITIES.................................................................iv

STATEMENT OF THE CASE............................................................... vii

ISSUES PRESENTED..................................................................... viii

STATEMENT OF FACTS ...................................................................1

SUMMARY OF THE ARGUMENT ......................................................13

ARGUMENT AND AUTHORITIES...................................................14

**I. Standard of review**. ...................................................................7

**II. There is legally and factually insufficient evidence to support the court's lack of finding that the introduction of EL Hollingsworth to Pro-Tech constituted disclosure of EJ Madison's confidential information to Pro-Tech. [Amended finding No. 3]** ................................................................. 17

**III. There is legally and factually insufficient evidence to support the court's factual finding No. 6 that the "Project" was the basis of the Agreement.**....... 17

**IV. There is legally and factually insufficient evidence to support the court's factual finding No. 7 that the language of the Agreement does not reflect that services not related to the conversion process constituted trade secrets**........ 17

**V. There is legally and factually insufficient evidence to support the court's factual finding No. 8 that there was no additional consideration provided by Plaintiff to Defendant that would make non-"Project" services covered by the Agreement**.................................................................................. 17

**V. The trial court erred by granting Appellee's Plea to the Jurisdiction that Appellant failed to bring suit in time** ............................................................. 17

**VI. There is legally and factually insufficient evidence to support the court's factual finding No. 9 that the services provided by Defendant E.L. Hollingsworth are those known in the industry, e.g., oil changes, windshield wiper replacements, and do not constitute trade secrets nor confidential information as intended by the Agreement** .......................................................17

**VII. There is legally and factually insufficient evidence to support the court's factual finding No. 10 that Plaintiff did not provide Defendant with a written copy of its customer list and EL Hollingsworth is not a customer of Plaintiff** 18

**VIII.  There is legally and factually insufficient evidence to support the court's factual finding No. 11 that Plaintiff is not entitled to any of the profits generated by Defendant for non-"Project" services Defendant provided to E.L. Hollingsworth** ..............................................................................................18

**IX.  There is legally and factually insufficient evidence to support the court's finding no. 12 that Plaintiff did not incur attorney's fees** ..................................29

**X. There is legally and factually insufficient evidence to support the court's lack of finding No. 12 that Plaintiff alleged its entitlement to attorney's fees, and the parties agreed that attorney's fees would be proven in a separate hearing.  [Amended No. 12]** ..........................................................................30

**XI. The court erred as a matter of law in its conclusion of law no. 1 that Defendant did not breach the Non-Disclosure Non Circumvention Agreement** ..........................................................................................................................30

**XII. The court erred as a matter of law in failing to find, or in its lack of finding, that Defendant's failure to turn over the profits, benefits and proceeds of its commercial relationship with EL Hollingsworth does not constitute breach of fiduciary duty.  [Additional no. 6]** ....................................31

**XIII. The court erred as a matter of law in its conclusion of law no. 2 that there is no language in the Non-Disclosure Non Circumvention Agreement reflecting an intent that services not related to nor arising from the conversion process constitute trade secrets or confidential financial and business information** ................................................................................................31

**XIV. The court erred as a matter of law in its conclusion of law no. 3 that the terms of the Non-Disclosure Non Circumvention Agreement did not prohibit**

iii

**Defendant from entering into a business relationship with E.L. Hollingsworth to provide mechanical services unrelated to the conversion process** ...............31

**XV. The court erred as a matter of law in its conclusion of law no. 4 that Defendant did not utilize Plaintiffs' trade secrets or confidential financial and business information in entering into a business relationship with E.L. Hollingsworth to provide mechanical services**...................................................31

**XVI.The court erred as a matter of law in its conclusion of law no. 5 that Plaintiff's claim for breach of contract fails for lack of consideration**.............31

**XVII. The court erred as a matter of law in its conclusion of law no. 6 that the alleged trade secret information was readily ascertainable by proper means, such as availability in trade journals, reference books, or published materials** ...................................................................................................................... 34

**XVIII.The court erred as a matter of law in its conclusion of law no. 7 that the alleged proprietary information was not substantially secret**...........................34

**XIX.The court erred as a matter of law in its conclusion of law no. 8 that Plaintiff is not entitled to any damages, actual or punitive** ..............................35

**XX. The court erred as a matter of law in its conclusion of law no. 9 that Pursuant to §38.001 et seq., Tex. Civ. Prac. & Rem. Code, Plaintiff is not entitled to attorney's fees**...................................................................................

PRAYER and CERTIFICATE OF SERVICE.........................................................37

APPENDIX:

**Judgment (August 3, 2017) (Ex. A)**

# INDEX OF AUTHORITIES

**Cases**

*American Nat'l Ins. Co. v. Paul*, 927 S.W.2d 239, 245 (Tex. App.—Austin 1996, writ denied)............................................................................................32

*Ames v. Ames*, 776 S.W.2d 154, 158-159 (Tex. 1989), cert. denied, 494 U.S. 1080, 110 S.Ct. 1809, 108 L. Ed. 2d 939 (1990) .........................................................15

*Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)....................14

*Austin Hardwoods, Inc. v. Vanden Berghe*, 917 S.W.2d 320, 322 (Tex. App.—El Paso 1995, writ denied) ................................................................ 16, 17, 18, 31

*Besing v. Moffit*, 882 S.W.2d 79, 81-82 (Tex. App.—Amarillo 1994, no writ)......14

*Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) ....................................................16

*Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)...........................................14

*Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007)............16

*City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005)...........................16

*Estate of Judd*, 8 S.W.3d 436 (Tex. App.—El Paso 1999, no pet.)........................14

*Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g)........15

*Hydrocarbon Management, Inc. v. Tracker Exploration, Inc.*, 861 S.W.2d 427, 431 (Tex. App.—Amarillo 1993, no writ)............................................................ 16, 31

*In re Estate of Judd*, 8 S.W.3d 436 (Tex.App.-El Paso 1999, no pet.) ............ 14, 15

*In re King's Estate*, 150 Tex. 662, 664-65, 244 S.W.2d 660, 661 (1951)......... 14,16

*Kaye/Bassman Intern. Corp. v. Help Desk Now, Inc.*, 321 S.W.3d 806, 814 (Tex.App.-Dallas 2010, pet. denied) ................................................................29

*MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009) ................................................................................................................14

*Mclemon v. Dynegy Inc.*, 347 S.W.3d 315 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ...............................................................................................29

*Runnels v. Firestone*, 746 S.W.2d 845, 849 (Tex. App—Houston [14th Dist.], writ denied, 760 S.W.2d 240 (Tex. 1988) .................................................................14

*Timmons v. Luce*, 840 S.W.2d 582, 586 (Tex. App.—Tyler 1992, no writ) ...........14

*Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999)...........................................................................15

*Vickery v. Commission for Lawyer Discipline*, 5 S.W.3d 241, 254 (Tex.App.—Houston [14th Dist.] 1999, pet. denied) ...................................................... 20, 33

*Watson v. Prewitt*, 159 Tex. 305, 305, 320 S.W.2d 815, 816 (1959)......................16

*Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987) .............15

## Statutes

Tex. Civ. Prac. & Rem. Code § 134A.002(6).........................................................28

## Rules

Tex. R. App. P. 43.3.................................. .............................................................16

Tex. R. Civ. Proc. 93(9).......................... ...............................................................29

## STATEMENT OF THE CASE

This a suit for breach of a Non-Disclosure and Non-Circumvention Agreement. Appellant, EJ Madison, LLC, alleged claims for breach of contract, breach of fiduciary duty and misappropriation of trade secrets under the Texas Uniform Trade Secrets Act ("TUTSA"). (CR I, 22). The parties tried the case nonjury on June 20, 2017 and which time the trial court rendered judgment for the defendant. On August 3, 2017, the trial court entered judgment. (CR I, 28).

On August 23, 2017, Appellant filed its Request for Findings of Fact and Conclusions of Law and on August 30, 2017 its Motion for New Trial. (CR I, 29, 31). On September 19, 2017, in absence of findings by the trial court (due by September 12, 2017), Appellant filed its Notice of Past Due Findings of Fact and Conclusions of Law. (CR I, 33).

On November 1, 2017, Appellant filed its Notice of Appeal. (CR I, 35).

On March 8, 2018, the trial court filed its Findings of Fact and Conclusions of Law, and on March 19, 2018, Appellant filed its Request for Amended Findings of Fact and Conclusions of Law.[1] (CR II, 4, 8).

---

[1] On January 26, 2018, in the absence of the filing of findings of fact and conclusions of law by the trial court, Appellant filed its Opposed Motion to Abate Appeal, Alternatively, to Extend Time to File Appellant's Brief which this Court granted by order on February 8, 2018 (further ordering that the trial court file its findings on or before March 20, 2018).

# ISSUES PRESENTED

Whether here is legally and factually insufficient evidence to support the court's lack of finding that the introduction of EL Hollingsworth to Pro-Tech constituted disclosure of EJ Madison's confidential information to Pro-Tech.

Whether there is legally and factually insufficient evidence to support the court's factual finding No. 6 that the "Project" was the basis of the Agreement.

Whether there is legally and factually insufficient evidence to support the court's factual finding No. 7 that the language of the Agreement does not reflect that services not related to the conversion process constituted trade secrets.

Whether here is legally and factually insufficient evidence to support the court's factual finding No. 8 that there was no additional consideration provided by Plaintiff to Defendant that would make non-"Project" services covered by the Agreement.

Whether there is legally and factually insufficient evidence to support the court's factual finding No. 9 that the services provided by Defendant E.L. Hollingsworth are those known in the industry, e.g., oil changes, windshield wiper replacements, and do not constitute trade secrets nor confidential information as intended by the Agreement.

Whether there is legally and factually insufficient evidence to support the court's factual finding No. 10 that Plaintiff did not provide Defendant with a written copy of its customer list and EL Hollingsworth is not a customer of Plaintiff.

Whether there is legally and factually insufficient evidence to support the court's factual finding No. 11 that Plaintiff is not entitled to any of the profits generated by Defendant for non-"Project" services Defendant provided to E.L. Hollingsworth.

Whether there is legally and factually insufficient evidence to support the court's finding no. 12 that Plaintiff did not incur attorney's fees.

Whether there is legally and factually insufficient evidence to support the court's lack of finding No. 12 that Plaintiff alleged its entitlement to attorney's fees, and the parties agreed that attorney's fees would be proven in a separate hearing.

Whether the court erred as a matter of law in its conclusion of law no. 1 that Defendant did not breach the Non-Disclosure Non Circumvention Agreement.

Whether the court erred as a matter of law in failing to find, or in its lack of finding, that Defendant's failure to turn over the profits, benefits and proceeds of its commercial relationship with EL Hollingsworth does not constitute breach of fiduciary duty.

Whether the court erred as a matter of law in its conclusion of law no. 2 that there is no language in the Non-Disclosure Non Circumvention Agreement reflecting an intent that services not related to nor arising from the conversion process constitute trade secrets or confidential financial and business information.

Whether the court erred as a matter of law in its conclusion of law no. 3 that the terms of the Non-Disclosure Non Circumvention Agreement did not prohibit Defendant from entering into a business relationship with E.L. Hollingsworth to provide mechanical services unrelated to the conversion process.

Whether the court erred as a matter of law in its conclusion of law no. 4 that Defendant did not utilize Plaintiffs' trade secrets or confidential financial and business information in entering into a business relationship with E.L. Hollingsworth to provide mechanical services.

Whether the court erred as a matter of law in its conclusion of law no. 5 that Plaintiff's claim for breach of contract fails for lack of consideration.

Whether the court erred as a matter of law in its conclusion of law no. 6 that the alleged trade secret information was readily ascertainable by proper means, such as availability in trade journals, reference books, or published materials.

Whether the court erred as a matter of law in its conclusion of law no. 7 that the alleged proprietary information was not substantially secret.

Whether the court erred as a matter of law in its conclusion of law no. 8 that Plaintiff is not entitled to any damages, actual or punitive.

Whether the court erred as a matter of law in its conclusion of law no. 9 that Pursuant to §38.001 et seq., Tex. Civ. Prac. & Rem. Code, Plaintiff is not entitled to attorney's fees.

## STATEMENT OF FACTS

EJ Madison, LLC ("EJ Madison") is a trucking company formed in 2008. (RR III, 57). Shortly thereafter, it began doing business with Pro-Tech Diesel, Inc. ("Pro-Tech") to perform maintenance work on EJ Madison's two trucks. (RR III, 57-58, 117). Pro-Tech had one 1 to 2 employees including owner Richie Rivera ("Rivera"). (RR III, 57-58; 117, 142). The two companies continued to do business with, and grow alongside, each other into 2014. (RR III, 57-58, 117). At that time, EJ Madison had acquired forty-five (45) trucks and some ninety (90) trailers. (RR III, 58, 117-118). EJ Madison was one of Pro-Tech's largest customers. (RR III, 118).

In late 2012, early 2013, EJ Madison began to explore the use of duel fuels (diesel and natural gas) on its trucks to save fuel costs and because natural gas burns cleaner. (RR III, 58-59).

EJ Madison's manager, John Warren ("Warren") approached Rivera about working together on "dual fuel conversion." (RR III, 59). The two companies had a good business relationship. Nevertheless, Warren requested that Rivera enter into a non-disclosure non-circumvent agreement on behalf of Pro-Tech. (RR III, 59-60). EJ Madison and Pro-Tech entered into the Agreement on February 25, 2013. (RR IV, Plt.'s Ex. 1) (RR III, 67) ("Non-Disclosure and Non-Circumvention Agreement") (the "Agreement").

1

Warren had used and entered into similar agreements in business for many years. (RR III, 61-62). This type of agreement was important for EJ Madison in this instance because Warren wanted to ensure he protected the development of any intellectual property and, further, to protect the introduction by EJ Madison to Pro-Tech of EJ Madison's valuable business relationships which it had developed at considerable expense. (RR III, 62). Additionally, Pro-Tech stood to benefit not only from performing installation of the technology specifically but through the introduction to other companies, including trucking companies, with whom Pro-Tech might do business, generally. (RR III, 62-63). Finally, Rivera also participated as a partner. (RR III, 63).

The Agreement provides in pertinent part:

> Pro Tech and EJM have entered into discussions with each other in connection with prospective business arrangements and/or opportunities involving the following commercial project: conversion of trucks, including without limitation, trucks owned by EJM/its related companies, from diesel powered operation to dual CNG/Diesel powered operation (the "Project").

(RR IV, Plt.'s Ex. 1) (Recitals ¶ 1); (RR III, 65-66). Ultimately, however, EJ Madison ruled-out Compressed Natural Gas ("CNG") in favor of Liquified Natural Gas ("LNG"). Warren explained that such a change is typical in the course of development of a project. (RR III, 66-67).

After entering into the Agreement with Pro-Tech, EJ Madison began cultivating relationships with other companies. (RR III, 67).

2

In particular, EJ Madison spent significant time and expense developing a relationship with EL Hollingsworth and Company ("EL Hollingsworth"), a "substantial transportation company" with several hundred trucks nationwide (RR III, 67; 69-70, 139). On or about August 24, 2013, EJ Madison and EL Hollingsworth entered into a "Confidentiality and Non-Disclosure Agreement" ("ELH Agreement"). (RR IV, Plt.'s Ex. 2). EL Hollinsworth was interested in converting trucks in its fleet to duel fuel and purchasing conversion kits from EJ Madison as its customer. (RR III, 65, 68). It was only after entering into the ELH Agreement that EJ Madison introduced Pro-Tech to EL Hollingsworth. (RR III, 67). Later, EL Hollingsworth became interested in being a financial partner. (RR III, 68). Warren would not have introduced Pro-Tech to EL Hollingsworth had Pro-Tech not entered into the Agreement. (RR III, 69).

Warren explained that in business when a company spends considerable time and money developing relationships and customers, it must ensure it protects its investment from being circumvented because the right introduction "quite often launches that business and makes that business into the success that it is." *Id.* Therefore, it is imperative to protect customer and contractual relationships. *Id.* Additionally, the expense of development of business and customer relationships often results in the further introduction and development of contractual relationships which are lucrative in and of themselves. *Id.*

3

Here, EJ Madison, including Warren himself, developed a unique a system, called a conversion kit, which displaced diesel fuel for natural gas. Natural gas is less expensive and burns cleaner all without sacrificing performance. It did so by coalescing electronic control module, fuel injection and tank technologies to become the only high-displacement system (over 50%) to obtain EPA certification. (RR III, 70-72).

Beginning in July 2014, EL Hollingsworth began operating EJ Madison's fleet of trucks out of Anthony, Texas, 35 of which were equipped with the conversion kits. (RR III, 72-73). EL Hollingsworth operated the trucks on duel fuel pursuant to contracts EJ Madison had developed with natural gas provider Clean Energy. (RR III, 73). Additionally, EL Hollingsworth entered into a business relationship with Clean Fuel Technologies, LLC ("CFT") and Clean Fuel Technologies, II, LLC ("CFT II"), successor companies to EJ Madison, whereby EL Hollingsworth (and/or its principals) became: (1) a buyer of/customer for conversion kits; (2) a financial contributor; and (3) including as a partner. (RR III, 74-75). Rivera too became a partner in CFT which owned a portion of CFT II. (RR III, 76, 95).

CFT II incurred significant expenses for improvements to a property in Anthony, Texas (the "property") from which Pro-Tech benefited because it began

4

conducting business from that location and continues to do so.   (RR III, 72, 73, 75-78).

Beginning on or about August 1, 2014, Pro-Tech began performing general maintenance work for EL Hollingsworth including on the former EJ Madison trucks and those equipped with the conversion kits.   Rivera never sought EJ Madison's authority, written or otherwise, to do business with EL Hollingsworth unrelated to the project.   (RR III, 78).   Warren neither made representations beyond the terms of the Agreement prior to it being executed nor did he verbally authorize Pro-Tech to do business with EL Hollingsworth by performing general maintenance.  (RR III, 158-160)

On May 11, 2015, EJ Madison made written demand on Pro-Tech pursuant to the terms of the Agreement and the provisions of the Texas Uniform Trade Secrets Act ("TUTSA").   (RR III, 80-81); (RR IV, Plt.'s Ex. 3).   Rivera acknowledged receiving the demand letter (RR III, 140).

EJ Madison maintenance records reflect that Pro-Tech ceased providing maintenance for EJ Madison in mid July 2014, the same time EL Hollingsworth assumed operations of the EJ Madison fleet.  (RR III, 82); (RR IV, Plt.'s Ex. 4). The EJ Madison maintenance records for the fleet (of approximately 45 trucks) beginning January 1, 2013 through December 2014 (ending on July 19, 2014) totaled $312,166.04 for an average of $16,429.79 per month.   (RR III, 81-82); (RR

IV, Plt.'s Ex. 4). Additionally, Pro-Tech's own invoicing records for maintenance provided to EL Hollingsworth, beginning July 21, 2014 and extending through May 22, 2015, reflect a total of $212,290.09, for an average monthly revenue paid by EL Hollingsworth of $21,229.09. (RR III, 83, 140-141); (RR IV, Plt.'s Ex. 5). This number is consistent with the amount incurred by EJ Madison prior to EL Hollingsworth assuming operations. (RR III, 82-83, 141). EJ Madison, at its highest point, compromised 10 to 15 percent of Pro-Tech's business or approximately 2.5 million dollars in annual sales. (RR III, 141-143).

If Pro-Tech had approached Warren about doing business with EL Hollingsworth, Warren would have negotiated a "win/win" agreement to allow Pro-Tech to profitably do business. (RR III, 87, 165-166). Non-disclosure non-circumvention agreements do not "spell out" the terms in advance because the parties need to be free to fully explore any future opportunities as they occur. (RR III, 167).

Stuart Mitchell ("Mitchell"), an attorney who primarily consults with young developing businesses, testified as an expert concerning covenants not to compete and confidentiality and non-circumvention agreements. (RR III, 15-16, 17).

While covenants not to compete are narrowly construed because they constrain productive activity, non-circumvention agreements and confidentiality agreements are broadly construed, but narrowly drawn, to protect intellectual

property and business practices of the protected party against abuse and unethical behavior by the party one is doing business with. (RR III, 16-17). Non-disclosure and non-circumvention agreements are broadly construed because they protect things known to the parties — the protected party's interest in his contractual agreements, his customers, his financing sources — things considered secret and proprietary. (RR III, 17, 168-170).

The confidentiality provisions of these agreements are necessary to protect against the dissemination of protected information, and the non-circumvention provisions "establish a bond of loyalty between two parties who are doing business"—for example, to prevent one party from doing business with the other's customer (RR III, 18-19). Customers are universally considered confidential information. (RR III, 19).

Mitchell reviewed the Agreement, the ELH Agreement, the depositions of Warren and Rivera and the plaintiff's exhibits. In Mitchell's opinion, the Agreement in the first instance protected EJ Madison against Pro-Tech developing business with EJ Madison's contacts and customers without first negotiating with EJ Madison as to how that should be done. (RR III, 19-20). He found the Agreement to be "a very standard confidentiality, non-disclosure agreement." (RR III, 20-21).

Additionally, while the Agreement described confidential information broadly, the categories of confidential information of particular relevance to this transaction were financing sources, contractual relationships and customers of which EL Hollingsworth was one. (RR III, 22-24). EJ Madison's relationship with EL Hollingsworth, and the subject of the ELH Agreement, represented a protected "contractual relationship" as defined in the Agreement. (RR III, 24). In fact, the mere disclosure of the identity of EL Hollingworth constituted protected customer/client information consistent with definitions and protection under the TUTSA. (RR III, 24-25).

In addition to maintaining the confidentiality of protected information, the Agreement restricted use of the information by the receiving party except as permitted in the Agreement. (RR III, 25-26); (RR IV, Plt.'s Ex. 1) (Recitals ¶ 3, Agreement ¶ 1). The Agreement restricted use of the confidential information to "project-related business," i.e., Pro-Tech "was not permitted to use the EL Hollingsworth contact for anything outside the project." (RR III, 26); (RR IV, Plt.'s Ex. 1) (Agreement ¶ 1(d)). Furthermore, the Agreement provided that Pro-Tech could not independently develop business with EL Hollingsworth as its identity is itself confidential information. (RR III, 26); (RR IV, Plt.'s Ex. 1) (Agreement ¶ 1(e)). A non-circumvention provision is usual and customary in a non-disclosure non-circumvention agreement. (RR III, 26-27).

8

Here, Pro-Tech initially did EJ Madison-related business with Hollingsworth but later went well beyond project-related business without obtaining authorization from EJ Madison. (RR III, 31-32). In doing so, Pro-Tech wrongfully obtained the profits from doing business with EL Hollingsworth while denying EJ Madison any benefit for having made the introduction. (RR III, 32). Mitchell testified that introductions often produce "found money" for the receiving party: "When I introduce you to somebody I'm doing business with, now you have completely found money if you are doing business with them. And it's only fair that I would be compensated for having brought that new business to you." (RR III, 170).

In the event of unauthorized use and circumvention by Pro-Tech, the Agreement provides an assignment to EJ Madison of "the profits, benefits and/or proceeds obtained by Pro Tech as a result of any use of the Confidential information that is not authorized by EJM". (RR IV, Plt.'s Ex. 1) (Agreement ¶ 1(e)). Such a "damages" provision is usual and customary, and reasonable, in this type of agreement and is akin to the availability of punitive damages under the TUTSA upon a showing of malice because a disclosing party can suffer extensive damages which are not easily calculated. (RR III, 33-34). Proceeds is appropriate because it prevents the receiving party from using the confidential information to make lots of money, then hiding what he's done, later claiming there is no money

9

to pay damages. And, in this case, Pro-Tech's claim of losses belies that it has remained in business for ten years. (RR III, 170-172, 173).

The Agreement further provides "that all rights hereunder shall inure to the benefit of any successor in interest," thereby protecting the original developer as well as other entities who, as business is developed, receive an interest in intellectual property and the benefits flowing from it. (RR III, 34-35); (RR IV, Plt.'s Ex. 1) (Agreement ¶ 7).

"The project in the Agreement defines the reason why the parties began to do business in a confidential and protected way, but it doesn't define the scope of all the information that's protected . . . [t]he confidential information that is protected is listed there in the first part of the agreement as financing sources, customers et cetera." These agreements are drawn this way for the reason the parties simply do know the opportunities that may arise or the introductions that may eventually be made. (RR III, 36). Confidential information includes "new product" development. (RR III, 37) (RR IV, Plt.'s Ex. 1) (Recitals ¶ 1).

The restraints provided in the Agreement were narrowly drawn, reasonable and consistent with public policy. (RR III, 38-39).

Rivera had an opportunity to read the Agreement before he signed it. (RR III, 117-118). He felt the opportunity for Pro-Tech to become an installer of the conversion kits to be a good one. (RR III, 118). Rivera and Pro-Tech had not

performed installations of this type prior to entering into the agreement, obtained the benefit of how to perform the installation as the result of the Agreement, and were paid to do installations on EJ Madison trucks. (RR III, 119).

Rivera acknowledged that Pro-Tech began doing maintenance work for EL Hollingsworth on or about August 1, 2014 and continued to do so at the time of trial. *Id.* Rivera made the decision in December 2014/January 2015 that Pro-Tech would no longer perform work on the conversion kits on the EL Hollingsworth-operated trucks not because the conversion kits were not operational but, rather, because he felt like this work was restricted by the terms of the Agreement. (RR III, 119-121). Nevertheless, he did not approach Warren about whether it was appropriate under the terms of the Agreement, and that required EJ Madison's written authorization, to do general maintenance work for EL Hollingsworth. (RR III, 121-122).

Rivera understood that any modification to the Agreement needed to be in writing and, further, that any use of the confidential information beyond the scope of the project required the parties' signatures and EJ Madison's written authorization. (RR III, 122-123, 132-133). And, Pro-Tech neither knew the identify of nor had done any work for EL Hollingsworth prior to entering into the Agreement and being introduced to them by Warren. (RR III, 124).

11

Furthermore, Rivera agreed that when he signed the Agreement, Pro-Tech was agreeing to keep certain of EJ Madison's information confidential and, more importantly, that EJ Madison was providing the information only because Pro-Tech had entered into the Agreement. (RR III, 128). Rivera understood Pro-Tech would be provided opportunities that otherwise it would not have had it not entered into the Agreement. (RR III, 128-129). Rivera understood that Pro-Tech was prohibited from circumventing EJ Madison as to its confidential information and the opportunities. (RR III, 128-131).

Rivera acknowledged signing the Agreement and that it contained a merger clause, i.e., that he signed it without relying on any prior or contemporaneous representations outside the terms of the Agreement. (RR III, 132-135).

On June 20, 2017, the parties tried the case nonjury. In the process of rendering judgment and announcing her decision, Judge Guadalupe Rivera agreed that EJ Madison's introduction of EL Hollingsworth to Pro-Tech constituted confidential information. (RR III, 192). Nevertheless, she determined that introduction did not relate to the Project, i.e., the conversion process and, further, that the Agreement did not prevent Pro-Tech from "conducting its business as usual." (RR III, 193).

## SUMMARY OF THE ARGUMENT

EJ Madison, LLC and Pro-Tech, Inc. entered into an unambiguous Non-Disclosure and Non-Circumvention Agreement (the "Agreement") which protected the disclosure, and limited the use of, trade secret information EJ Madison furnished to Pro-Tech to only that which was project-related. In reliance on the Agreement, EJ Madison disclosed the identity of its customer/contact EL Hollingsworth to Pro-Tech, and thereafter Pro-Tech began doing non-project related business with EL Hollingsworth.

The trial court rendered judgment against EJ Madison finding the disclosure of its relationship with EL Hollingsworth was not protected because it did not relate to the Project, i.e., conversion of diesel-powered vehicles to duel fuel.

The Agreement can only reasonably be read such that it protects EJ Madison's disclosure of its trade secret information pursuant to the Agreement. To interpret it only to protect information used to evaluate the project or that can be said to be related to the conversion process results in provisions of the Agreement being rendered meaningless and the Agreement itself rendered worthless.

The trial court's findings of fact and conclusions of law in this regard should be disregarded, and the case reversed and remanded.

## ARGUMENT AND AUTHORITIES

### I.  Standard of review.

#### A. <u>Nonjury Trial</u>

Findings of fact may be requested in "any case tried in the district or county court without a jury."  Tex. R. Civ. Proc. 296.  A case is "tried" when there is a hearing before the court on conflicting evidence.  *Besing v. Moffit*, 882 S.W.2d 79, 81-82 (Tex. App.—Amarillo 1994, no writ).  *Timmons v. Luce*, 840 S.W.2d 582, 586 (Tex. App.—Tyler 1992, no writ).

#### **Findings of Fact**

A trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer.  *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see also MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009).  In a factual sufficiency review, the court reviews all the evidence and may reverse the decision of the trial court only if its ruling is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *Estate of Judd*, 8 S.W.3d 436 (Tex. App.—El Paso 1999, no pet.) (citing *In re King's Estate*, 150 Tex. 662, 664-65, 244 S.W.2d 660, 661 (1951); *Runnels v. Firestone*, 746 S.W.2d 845, 849 (Tex. App—Houston [14th Dist.], writ denied,

760 S.W.2d 240 (Tex. 1988). When a reporter's record is part of the appellate record, findings of fact are not conclusive on appeal, even if unchallenged. *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987); *Estate of Judd*, 8 S.W.3d at 441.

In reviewing such a point, the court considers and weighs all the evidence, both the evidence that tends to prove as well as the evidence that tends to disprove its existence. *Id*. (citing *Ames v. Ames*, 776 S.W.2d 154, 158-159 (Tex. 1989), cert. denied, 494 U.S. 1080, 110 S.Ct. 1809, 108 L. Ed. 2d 939 (1990); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). So, considering the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Id*. (citing *Watson v. Prewitt*, 159 Tex. 305, 305, 320 S.W.2d 815, 816 (1959); *In re King's Estate*, 244 S.W.2d at 661).

In a legal sufficiency or "no evidence" review, the court may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); *Uniroyal Goodrich Tire Co. v.*

15

*Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999). In determining whether there is legally sufficient evidence to support the finding under review, the court must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When the court sustains a legal sufficiency issue, it has a duty to render judgment for the appellant because that is the judgment the trial court should have rendered. *Vista Chevrolet, Inc. v. Lewis*, 709 S.W.2d 176, 176 (Tex. 1986); *see* Tex. R. App. P. 43.3.

### Conclusions of Law

The legal conclusions of the trial court are not binding on the appellate court; appellate courts are free to draw their own legal conclusions and review those conclusions de novo. *Hydrocarbon Management, Inc. v. Tracker Exploration, Inc.*, 861 S.W.2d 427, 431 (Tex. App.—Amarillo 1993, no writ); *see also Austin Hardwoods, Inc. v. Vanden Berghe*, 917 S.W.2d 320, 322 (Tex. App.—El Paso 1995, writ denied).

**Contract Law**

When a contract is susceptible to a legal meaning, the construction of the written instrument is one of law for the court. *Id*. When parties disagree over the meaning of an unambiguous contract, the court must determine the intent of the parties. This determination must be based on the objective intent of the parties expressed in the agreement, and not their present interpretation. *Austin Hardwoods, Inc.*, 917 S.W.2d at 323.

FINDINGS OF FACT

**II.** **There is legally and factually insufficient evidence to support the court's lack of finding that the introduction of EL Hollingsworth to Pro-Tech constituted disclosure of EJ Madison's confidential information to Pro-Tech. [Amended finding No. 3]**

**III.** **There is legally and factually insufficient evidence to support the court's factual finding No. 6 that the "Project" was the basis of the Agreement.**

**IV.** **There is legally and factually insufficient evidence to support the court's factual finding No. 7 that the language of the Agreement does not reflect that services not related to the conversion process constituted trade secrets.**

**V.** **There is legally and factually insufficient evidence to support the court's factual finding No. 8 that there was no additional consideration provided by Plaintiff to Defendant that would make non-"Project" services covered by the Agreement.**

**VI.** **There is legally and factually insufficient evidence to support the court's factual finding No. 9 that the services provided by Defendant E.L. Hollingsworth are those known in the industry, e.g., oil changes, windshield wiper replacements, and do not constitute trade secrets nor confidential information as intended by the Agreement.**

17

**VII.  There is legally and factually insufficient evidence to support the court's factual finding No. 10 that Plaintiff did not provide Defendant with a written copy of its customer list and EL Hollingsworth is not a customer of Plaintiff.**

**VIII.  There is legally and factually insufficient evidence to support the court's factual finding No. 11 that Plaintiff is not entitled to any of the profits generated by Defendant for non-"Project" services Defendant provided to E.L. Hollingsworth. [2]**

A. The Agreement

The Agreement provides in pertinent part:

## RECITALS:

EJM is a trucking company and Pro Tech is in the business of truck maintenance and repair, including, among other things, converting trucks from diesel powered operation to dual CNG/diesel powered operation.  Pro Tech and EJM have entered into discussions with each other in connection with prospective business arrangements and/or opportunities involving the following commercial project: conversion of trucks, including without limitation, trucks owned by EJM/its related companies, from diesel powered operation to dual CNG/Diesel powered operation (the 'Project').

(RR IV, Plt.'s Ex. 1) (Recitals ¶ 1).

[I]n order to evaluate the feasibility of the Project, EJM will provide to Pro Tech confidential financial and business information concerning EJM's business plans, financing sources, sales, margins, profits, customers, marketing programs and plans, new product developments, contractual relationships as well as proprietary information concerning product technology, software, trade secrets, product development, new product ideas and new applications for

---

[2] The legal and factual sufficiency of Findings of Fact Nos. 6-11 and Amended Finding of Fact No. 3 will be argued together as they depend upon a review of Agreement for their resolution. *Austin Hardwoods, Inc.*, 917 S.W.2d at 323.

existing products and technology, all of the foregoing being hereafter referred to as 'Confidential Information.'

(RR IV, Plt.'s Ex. 1) (Recitals ¶ 2).

EJM has agreed to furnish such Confidential Information to the Pro Tech to allow Pro Tech the opportunity to evaluate the feasibility of the Project, but only on the condition that both the Confidential Information, and all documents derived from or containing the Confidential Information be maintained confidential and *used only as allowed* under this Agreement.

(RR IV, Plt.'s Ex. 1) (Recitals ¶ 3) (emphasis added).

## AGREEMENT:

1.    Non-Disclosure, Non-Use and Non-Circumvention.  Pro Tech shall: (a) keep EJM's Confidential Information in strict confidence; (b) protect it with the same degree of care as the Pro Tech treats its own Confidential Information; (c) not without the prior written consent of EJM, disclose or permit it to be disclosed to anyone other than Pro Tech's directors, officers, employees, agents or consultants who have a legitimate need to know the Confidential Information for the Pro Tech to negotiate, participate in, or perform services with respect to the Projects; (d) will not use, and will not permit its directors, officers, employees, agents or consultants to use, the Confidential Information for any reason other than for the Project; and (e) not circumvent EJM in connection with the Confidential Information.

(RR IV, Plt.'s Ex. 1) (Agreement ¶ 1).

Findings of Fact Nos. 3 and 6

In its Finding of Fact No. 3, the trial court found:

*After entering into the Agreement, EJ Madison introduced Pro-Tech to EL Hollingsworth, a Michigan company that operates diesel vehicles in Michigan, with subsequent operations in Texas.  Based on this introduction, Pro-Tech began providing maintenance service on*

19

*EL Hollingsworth trucks, including oil changes, tire and windshield replacements.*

(CR II, 5). In response, Appellant filed its "Plaintiff's Request for Amended Findings of Fact and Conclusions of Law. (CR II, 8). Appellant requested the following amended Finding of Fact No. 3.:

> [Amended] 3. *After entering into the Agreement, EJ Madison introduced Pro-Tech to EL Hollingsworth, a Michigan company that operates diesel vehicles in Michigan, with subsequent operations in Texas.* ***The introduction of EL Hollingsworth to Pro-Tech constituted disclosure of EJ Madison's confidential information to Pro-Tech.*** *Based on this introduction, Pro-Tech began providing maintenance service on EL Hollingsworth trucks, including oil changes, tire and windshield replacements.*[3]

(CR II, 8). Thus, Appellant can challenge lack of this finding. *See e.g., Vickery v. Commission for Lawyer Discipline*, 5 S.W.3d 241, 254 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). Judge Guadalupe specifically found on the record that the introduction of EL Hollingsworth constituted EJ Madison's confidential information. (CR II, 192-193). The above amended requested finding of fact conforms the findings to the trial court's ruling on the record. Moreover, as discussed below, there is no question but that when EJ Madison introduced EL Hollingsworth to Pro-Tech it disclosed confidential information that was protected and limited in the manner it could be used by Pro-Tech.

In its Finding of Fact No. 6, the trial court found:

---

[33] The language in bold is the proposed language amending the finding.

20

> *The "Project" i.e., the conversion of diesel powered trucks to dual CNG/Diesel powered vehicles was the basis of the Confidentiality and Non-disclosure agreement executed by the parties.*

(CR II, 5).

A review of the language of the Agreement as set forth above reveals: (1) EJ Madison and Pro-Tech "entered into discussions with each other concerning *prospective business arrangements and/or opportunities* involving the [Project]" (RR IV, Plt.'s Ex. 1) (Recitals ¶ 1) (emphasis added); (2) "[I]n order to evaluate the feasibility of the Project, EJM will provide to Pro Tech confidential financial and business information concerning EJM's . . . *financing sources* . . . profits, *customers* . . . plans, new product developments, *contractual relationship*s as well as *proprietary information* concerning . . . *trade secrets* . . . all of the foregoing being hereafter referred to as 'Confidential Information'" (RR IV, Plt.'s Ex. 1) (Recitals ¶ 2) (emphasis added); (3) "EJM has agreed to furnish such Confidential Information to . . . Pro Tech to allow Pro Tech the opportunity to evaluate the feasibility of the Project, *but only on the condition that both the Confidential Information . . . be maintained confidential* and *used only as allowed* under this Agreement" (RR IV, Plt.'s Ex. 1) (Recitals ¶ 3) (emphasis added); and (4) "Pro Tech shall: (a) keep EJM's Confidential Information in strict confidence . . . [and] *will not use* . . . the Confidential Information *for any reason other than the Project*

21

*. . . . [and] not circumvent EJM in connection with the Confidential Information.*"
(RR IV, Plt.'s Ex. 1) (Agreement ¶ 1) (emphasis added).

In the instant case, there is no question but that the parties disagree as to the meaning of the Agreement and the scope of the protection provided for EJ Madison's confidential information vis-à-vis the Project. EJ Madison asserted that the Agreement restricted use of the confidential information to "project-related business," i.e., that Pro-Tech "was not permitted to use the EL Hollingsworth contact [or any other protected information] for anything outside the project." (RR III, 26) (RR IV, Plt.'s Ex. 1) (Agreement ¶ 1(d)). On the other hand, Pro-Tech purported to assert that the confidential information was protected only to the limited extent necessary to *evaluate* the Project, (RR III, 41-44), or if the confidential information specifically *related to* the subject of the project—conversion of diesel trucks to duel fuel. (RR III, 191-193; *see also* R III, 9-12 (the argument of defendant's counsel).

When parties disagree over the meaning of an unambiguous contract, the court must determine the intent of the parties. This determination must be based on the objective intent of the parties expressed in the agreement, and not their present interpretation. The construction of an unambiguous contract is a question of law for the court. To determine the objective intent of the parties, a court should examine the entire instrument in an effort to harmonize and give effect to all

22

provisions of the contract so that none will be rendered meaningless. *Austin Hardwoods, Inc.*, 917 S.W.2d at 323.

Here, Pro-Tech's interpretation and the trial court's finding wholly fails to recognize, much less harmonize and give effect to, all provisions of the contract such that multiple provisions are rendered meaningless. First, by limiting the scope of protection to *evaluation* of the Project renders the "non-use" and "non-circumvention" provisions ineffective. Paragraph 3 of the Recitals in the first instance provides that the confidential information is being furnished on condition that it "be maintained confidential and *used only as allowed* under this Agreement." (RR IV, Plt.'s Ex. 1) (Recitals ¶ 3) (emphasis added). Thereafter, paragraph 1. "Non-Disclosure, Non-Use and Non-Circumvention" independently provides that Pro-Tech "keep the "Confidential Information in strict confidence [and] (d) . . . not use . . . the Confidential Information for *any reason other than the Project . . .* and (e) *not circumvent EJM in connection with the Confidential Information.*" (RR IV, Plt.'s Ex. 1) (Agreement ¶ 1(d)(e)) (emphasis added). To accept Pro-Tech's interpretation not only renders the above provisions meaningless but effectively renders the Agreement worthless as it would provide EJ Madison no protection whatsoever. Thus, whether Pro-Tech "evaluates" the Project in good faith or continues-on pursuant according to the original purpose of the disclosure of the protected information, according to Pro-Tech, it is free thereafter to use

23

whatever confidential/proprietary/trade secret information it has received as long as same was not used to evaluate the project or did not specifically pertain to the subject of the Project—here related to conversion. Thus, it matters not whether the information is otherwise EJ Madison's proprietary or trade secret information, i.e., Confidential Information as provided in the Agreement. Obviously, the Agreement cannot reasonably be interpreted to leave otherwise protected information unprotected simply because the receiving party describes it as unnecessary to evaluation of the Project and/or as unrelated to what the parties originally described as the Project. It is only necessary that the confidential information was disclosed pursuant to the Agreement and that it be confidential information. If so, the receiving party (Pro-Tech) can neither use nor circumvent the disclosing party (EJ Madison) as to the confidential information and can only use it for Project-related purposes. As Mitchell testified, "The project in the Agreement defines the reason why the parties began to do business in a confidential and protected way, but it doesn't define the scope of all the information that's protected . . . [t]he confidential information that is protected is listed there in the first part of the agreement as financing sources, customers et cetera." He further explained these agreements are drawn this way for the reason the parties simply do know the opportunities that may arise or the introductions that may eventually be made. (RR III, 36)

24

Findings of Fact Nos. 7-11

In its Finding of Fact No. 7, the trial court further found:

*It was not intended nor is there any language in the Non-Disclosure Non-Circumvention Agreement reflecting an intent that services not related nor arising from the conversion process constituted trade secrets or confidential financial and business information.*

(CR II, 5-6).

In its Finding of Fact No. 8, the trial court further found:

*There was no additional consideration provided by Plaintiff to Defendant that would make non-Project services covered by the Agreement.*

(CR II, 6).

In its Finding of Fact No. 9, the trial court further found:

*The services provided by Defendant to E.L. Hollingsworth are those known in the industry, e.g., oil changes, windshield wiper replacements, and do not constitute trade secrets nor confidential information as intended by the Agreement.*

(CR II, 6).

In its Finding of Fact No. 10, the trial court further found:

*Plaintiff did not provide Defendant with a written copy of its customer list, and EL Hollingsworth is not a customer of Plaintiff.*

(CR II, 6).

In its Finding of Fact No. 11, the trial court further found:

25

> *Plaintiff is not entitled to any of the profits generated by Defendant for non-"Project" services Defendant provided to E.L. Hollingsworth.*

(CR II, 6).

Again, to determine whether there is legally and factually sufficient evidence supporting the above findings, it is necessary to review the entire Agreement, to harmonize and give effect to all its provisions so that none will be rendered meaningless. *Austin Hardwoods, Inc.*, 917 S.W.2d at 323.

A review of the contractual language set forth above quite simply does not even refer to or purport to address, much less define, *Pro-Tech's services* "not related nor arising from the conversion process" or that same "constituted trade secrets" or other protected information of EJ Madison.  (CR II, 5-6) (FOF No. 7). Further, it appears the trial court conflated the Agreement's restrictions in the non-use and non-circumvention provisions with what is traditionally considered non-competition clauses. As Mitchell made clear, while non-competition agreements are narrowly construed because they constrain productive activity (what the trial court appears to be addressing in findings 7, 9 and 11), (RR III, 16-17); non-disclosure and non-circumvention agreements are broadly construed because they protect things known to the parties — the protected party's interest in his contractual agreements, his customers, his financing sources — things considered secret and proprietary.  (RR III, 17, 168-170).

Here, the Agreement in no way restricts Pro-Tech's ability to perform its usual services, whether they be oil changes/windshield wiper replacement, it simply prohibits Pro-Tech's unauthorized use (in whatever form that may take) of EJ Madison's confidential trade secret information outside of the Project and/or to circumvent EJ Madison. (RR IV, Plt.'s Ex. 1) (Recitals ¶ 1-3) (Agreement ¶ 1(d)(e)). The Agreement restricted use of the confidential information to "project-related business," i.e., Pro-Tech "was not permitted to use the EL Hollingsworth contact for anything outside the project." (RR III, 26); (RR IV, Plt.'s Ex. 1) (Agreement ¶ 1(d)(e)). Additionally, Pro-Tech was free to do business with EL Hollingsworth in whatever form as long as it obtained EJ Madison's written authorization. (R III, 87, 165-166).

The record here contains ample evidence that EJ Madison's relationship with EL Hollingsworth constituted its valuable trade secret information whether as a customer, financial partner or contractual relationship and that the introduction was made only after EJ Madison and EL Hollingsworth had entered into their own confidentiality and non-circumvention agreement. Further, EJ Madison made the introduction to Pro-Tech in reliance on Pro-Tech's promises in the Agreement— and would not have made it otherwise (RR III, 65, 67, 68, 69). Again, because of the considerable time and money a company spends to develop relationships, contractual relationships, customers and/or contacts, it is imperative, and was to

27

Warren and EJ Madison, that same remain protected trade secret information. (RR III 69). Furthermore, the TUTSA protects broad categories of information (including potential customers) where the owner of the trade secret has taken reasonable measures to keep the information secret and the information was not generally known to the person to who is in a position to derive economic benefit from it.[4]

There is simply no question but that EL Hollingsworth constituted EJ Madison's trade secret information (as its customer or potential customer), which EJ Madison had taken reasonable efforts to protect (via the Agreement and the timing of the disclosure), that the information was previously unknown to Pro-Tech, and from which it stood, and did, derive economic benefit. (RR III, 65, 67, 68, 69, 83, 124, 140-141) (RR IV, Plt.'s Ex. 5).

Therefore, as to Findings Nos. 7, 9 and 11, reviewing the instrument as a whole in an effort to harmonize and give effect to all the provisions of the

_____

[4] The Texas Uniform Trade Secret Act defines "trade secret" as: "Trade secret" means all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if: (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. Tex. Civ. Prac. & Rem. Code § 134A.002(6).

Agreement, the restrictions relate not to Pro-Tech's services, but rather, EJ Madison's trade secret information.

Furthermore, as to Finding No. 8, because the Agreement neither refers to nor purports to restrict Pro-Tech's ability to provide services outside the Project as long it does not violate the non-use or non-circumvention provisions, to assert "additional consideration" was required improperly supplies terms not contained within the Agreement and which are outside the record.[5]

Likewise, in regard to Finding No. 10, the Agreement does not require that EJ Madison provide to Pro-Tech "a written copy of its customer list." On the contrary, the Agreement protects the disclosure, in whatever form, of EJ Madison's confidential information. (RR IV, Plt.'s Ex. 1) (Recitals ¶¶ 2-3; Agreement ¶¶ 1-2). Furthermore, as set forth above, even potential customers, and arguably EL Hollingsworth as a contact, potential customer, customer, contractual relationship and/or financing partner, constitutes protected trade secret information. *See* n. 3 *supra*.

**IX.  There is legally and factually insufficient evidence to support the court's finding no. 12 that Plaintiff did not incur attorney's fees.**

---

[5] The record is devoid of any evidence at trial regarding any failure of consideration and, thus, the issue was/is arguably not before the trial court or this Court. Moreover, defendant although it pled lack of consideration failed to verify its pleading. Lack of consideration for a contract is an affirmative defense to its enforcement. *Mclemon v. Dynegy Inc.*, 347 S.W.3d 315 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (*See* Tex.R. Civ. P. 94; *Kaye/Bassman Intern. Corp. v. Help Desk Now, Inc.*, 321 S.W.3d 806, 814 (Tex.App.-Dallas 2010, pet. denied). It must be pleaded by verified denial. Tex. R. Civ. Proc. 93(9).

**X.    There is legally and factually insufficient evidence to support the court's lack of finding No. 12 that Plaintiff alleged its entitlement to attorney's fees, and the parties agreed that attorney's fees would be proven in a separate hearing.  [Amended No. 12]**

The record conclusively proves the parties stipulated that attorney's fees would be addressed in a separate hearing.  (RR III, 103).  It appears the trial court overlooked the stipulation of the parties in this regard.  In any event, there is no evidence support the finding (or lack thereof) or the finding (or the lack thereof) is against the great weight and preponderance such that the matter should be remanded for a hearing on Plaintiff's attorney's fees.

As such, there is simply no probative evidence, or reasonable inferences therefrom, which supports the above findings.  *Hydrocarbon Management, Inc.,* 861 S.W.2d at 431.  Thus, the findings are legally insufficient to support the judgment, and Appellant's "no-evidence" points should be sustained.  Alternatively, viewing the Agreement as a whole, the evidence supporting the findings is so weak and against the great weight and preponderance of the evidence as to be clearly and manifestly wrong such that same are factually insufficient to support the judgment.  *Id.*

CONCLUSIONS OF LAW

**XI.    The court erred as a matter of law in its conclusion of law no. 1 that Defendant did not breach the Non-Disclosure Non Circumvention Agreement.**

**XII.  The court erred as a matter of law in failing to find, or in its lack of finding, that Defendant's failure to turn over the profits, benefits and proceeds of its commercial relationship with EL Hollingsworth does not constitute breach of fiduciary duty.  [Additional no. 6]**

**XIII. The court erred as a matter of law in its conclusion of law no. 2 that there is no language in the Non-Disclosure Non Circumvention Agreement reflecting an intent that services not related to nor arising from the conversion process constitute trade secrets or confidential financial and business information.**

**XIV. The court erred as a matter of law in its conclusion of law no. 3 that the terms of the Non-Disclosure Non Circumvention Agreement did not prohibit Defendant from entering into a business relationship with E.L. Hollingsworth to provide mechanical services unrelated to the conversion process.**

**XV.  The court erred as a matter of law in its conclusion of law no. 4 that Defendant did not utilize Plaintiffs' trade secrets or confidential financial and business information in entering into a business relationship with E.L. Hollingsworth to provide mechanical services.**

**XVI. The court erred as a matter of law in its conclusion of law no. 5 that Plaintiff's claim for breach of contract fails for lack of consideration.**

The legal conclusions of the trial court are not binding on the appellate court; appellate courts are free to draw their own legal conclusions and review those conclusions de novo.  *Hydrocarbon Management, Inc. v. Tracker Exploration, Inc.*, 861 S.W.2d 427, 431 (Tex. App.—Amarillo 1993, no writ); *see also Austin Hardwoods, Inc. v. Vanden Berghe*, 917 S.W.2d 320, 322 (Tex. App.—El Paso 1995, writ denied).  When a party requests findings and the court files them, the court of appeals can presume that omitted findings support the judgment

only when (1) an element of the ground of recovery was included in the findings of fact, (2) the omitted element was not properly requested, and (3) the omitted finding is supported by the evidence. Tex. R. Civ. Proc. 299; *American Nat'l Ins. Co. v. Paul*, 927 S.W.2d 239, 245 (Tex. App.—Austin 1996, writ denied.

Conclusions Nos. 1-5 (and Lack of Finding as to Breach of fiduciary Duty)

In its Conclusion of Law No. 1, the trial court found:

*Defendant did not breach the Non-Disclosure Non Circumvention Agreement.*

(CR II, 6). For the reasons, and based on the evidence, set forth above (in Appellant's argument related to the court's findings of fact), i.e., a review of the provisions of the Agreement, it is clear Pro-Tech breached the non-use and non-circumvention terms of the Agreement when it began doing non-project related business with EL Hollingsworth. As a matter of law, harmonizing the terms of the Agreement, it is readily apparent the Agreement protected the disclosure of EJ Madison's confidential information (here, its relationship with EL Hollingsworth) against unauthorized use and/or circumvention by Pro-Tech. When Pro-Tech began doing business with EL Hollingsworth without EJ Madison's authorization, it breached the non-use and non-circumvention provisions of the Agreement. As such, Pro-Tech is liable for breach of contract.

The trial court's Conclusion of Law No. 1 finding no breach does not specifically address Appellant's breach of fiduciary duty cause of action.

32

However, after the trial court filed its findings, Appellant timely filed its "Plaintiff's Request for Amended Findings of Fact and Conclusions of Law" wherein it requested an additional conclusion of law as follows:

> *[Additional] 6. Defendant's failure to turn over the profits, benefits and proceeds of its commercial relationship with EL Hollingsworth does not constitute breach of fiduciary duty.*

(CR II, 8-11).  Thus, Appellant can challenge lack of this finding.  *See e.g., Vickery v. Commission for Lawyer Discipline*, 5 S.W.3d 241, 254 (Tex.App.—Houston [14th Dist.] 1999, pet. denied).   The same facts and reasoning which evidence and support breach of contract likewise support that Pro-Tech's failure to turn over the proceeds constitutes breach of its fiduciary duty.

In its Conclusion of Law No. 2, the trial court found:

> *There is no language in the Non-Disclosure Non Circumvention Agreement reflecting an intent that services not related to nor arising from the conversion process constitute trade secrets or confidential financial and business information.*

(CR II, 6).

In its Conclusion of Law No. 3, the trial court found:

> *The terms of the Non-Disclosure Non Circumvention Agreement did not prohibit Defendant from entering into a business relationship with E.L. Hollingsworth to provide mechanical services unrelated to the conversion process.*

(CR II, 6).

In its Conclusion of Law No. 4, the trial court found:

*Defendant did not utilize Plaintiffs' trade secrets or confidential financial and business information in entering into a business relationship with E.L. Hollingsworth to provide mechanical services.*

(CR II, 7).

In its Conclusion of Law No. 5, the trial court found:

*Plaintiff's claim for breach of contract fails for lack of consideration.*

(CR II, 7).

Furthermore, the Agreement does not address nor purport to restrict, or classify as protected trade secrets, Pro-Tech's non-project related services so as to somehow act as a "non-competition" clause. Conclusions of law Nos. 2-4 which are premised on a non-existent provision prohibiting Pro-Tech's "competition" are manifestly wrong as a matter of law and should be reversed.

Finally, for the reasons forth in the argument related to the finding of fact no. 8, the trial court's conclusion of law no. 5 that EJ Madison's claim fails for lack of consideration is without basis as a matter of law and should be reversed.

**XVII. The court erred as a matter of law in its conclusion of law no. 6 that the alleged trade secret information was readily ascertainable by proper means, such as availability in trade journals, reference books, or published materials.**

**XVIII. The court erred as a matter of law in its conclusion of law no. 7 that the alleged proprietary information was not substantially secret.**

*The alleged trade secret information was readily ascertainable by proper means, such as availability in trade journals, reference books, or published materials.*

*The alleged proprietary information was not substantially secret.*

(CR II, 7). First, there is no evidence in the record to support these conclusions. In fact, as noted above, Rivera admitted he did not know of EL Hollingsworth prior to the introduction by Warren. (RR III, 124). Moreover, such information fits squarely into the definition of what constitutes a protected trade secret under the TUTSA. *See* Tex. Civ. Prac. & Rem. Code § 134A.002(6). These findings are unsupported as a matter of law and should be reversed.

**XIX. The court erred as a matter of law in its conclusion of law no. 8 that Plaintiff is not entitled to any damages, actual or punitive.**

In its Conclusions of Law No. 8, the trial court found:

*Plaintiff is not entitled to any damages, actual or punitive.*

(CR II, 7). The trial court's conclusion in this regard is necessarily premised on its factual findings of no breach and no misappropriation of trade secrets. Appellant would submit the court's factual findings on the elements of breach of contract and fiduciary duty, as well as misappropriation of trade secrets, are legally and factually sufficient such that they should be reversed and, alternatively, remanded.

Additionally, EJ Madison proved it was damaged pursuant to the terms of the Agreement in the amount of the proceeds it provided that Pro-Tech had a duty

to turnover in the event of a breach. Pro-Tech's own invoicing records for maintenance provided to EL Hollingsworth, beginning July 21, 2014 and extending through May 22, 2015, reflect a total of $212,290.09, for an average monthly revenue paid by EL Hollingsworth of $21,229.09. (RR III, 83, 140-141); (RR IV, Plt.'s Ex. 5). This number is consistent with the amount incurred by EJ Madison prior to EL Hollingsworth assuming operations. (RR III, 83, 141). EJ Madison, at its highest point, compromised 10 to 15 percent of Pro-Tech's business or approximately 2.5 million dollars in annual sales. (RR III, 141-143, 163). Rivera acknowledged that Pro-Tech began doing maintenance work for EL Hollingsworth on or about August 1, 2014 and continued to do so at the time of trial. (RR III, 119).

Based on Pro-Tech's invoicing, the proceeds represent $212,290.09 through May 2015 and $21,229.09 each month thereafter through time of trial ($504,498.16)[6] and ongoing. (RR 153). This finding should be reversed and the issue remanded to the trial court for a determination as to future damages, i.e., beyond the date of trial.

> **XX.** **The court erred as a matter of law in its conclusion of law no. 9 that Pursuant to §38.001 et seq., Tex. Civ. Prac. & Rem. Code, Plaintiff is not entitled to attorney's fees.**

In its Conclusions of Law No. 9, the trial court found:

---

[6] $21,229.09 multiplied by the number of months (24) beginning June 2015 and extending through May 2017.

36

> *Pursuant to §38.001 et seq., Tex. Civ. Prac. & Rem. Code, Plaintiff is not entitled to attorney's fees.*

(CR II, 7). The record conclusively proves the parties stipulated that attorney's fees would be addressed in a separate hearing. (RR III, 103). As set forth above, it appears the trial court overlooked the stipulation of the parties in this regard. In any event, as a matter of law this conclusion is contrary the parties stipulation and should be reversed.

## PRAYER

For these reasons, Appellant respectfully requests that the trial court's judgment be reversed, alternatively, remanded to the trial court for further proceedings and that Appellant be awarded its costs of court.

TROY C. BROWN
Attorney at Law
300 E. Main
10th Floor, Suite 1000
El Paso, Texas 79901
Phone: (915) 543-9669
Fax: (888) 922-3353
E-mail: troy@tcblegal.com

/s/*Troy C. Brown*_____
TROY C. BROWN
State Bar Number 00783735
Attorney for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on the 21st day of May 2018, to: Mannie Kalman, 1214 Montana Avenue, El Paso, Texas 79902, pursuant to the Court's Notice of Electronic Procedures established for the El Paso County Courts via e-mail: mkalman@manniekalman.com.

/s/*Troy C. Brown*_____
Troy C. Brown

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Appellant's Brief contains 8,209 words.

/s/*Troy C. Brown*_____
TROY C. BROWN

IN THE COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

_____

NO.  08-17-00229-CV


**EJ MADISON, LLC.**

**v.**

**PRO-TECH DIESEL, INC.**

_____

Appealed from the 205TH Judicial District Court
of El Paso County, Texas

_____

**APPENDIX**

_____

**Judgment (August 3, 2017) (Ex. A)**

**Tex. Govt. Code §554.002 (Ex. B)**

**Excerpts from Tea.texas.gov (Ex. C)**

El Paso County - 205th District Court

Filed 8/11/2017 3:16 PM
Norma Favela Barceleau
District Clerk
El Paso County
2015DCV2479

## IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS
## 205TH JUDICIAL DISTRICT

EJ MADISON, LLC., a Texas §
limited liability company, §
SOUTHWEST TRUCK LEASING, §
a Texas Limited liability company, and §
EJM LEASING, LLC, a Texas §
limited liability company §
    Plaintiffs, §
 §
 §
v. §    Cause No. 2015-DCV2479
 §
PRO-TECH DIESEL, INC., §
    Defendant. §

### FINAL JUDGMENT

On the date set forth below, came on to be heard the above entitled and numbered cause;

Plaintiffs EJ MADISON, LLC, SOUTHWEST TRUCKING LEASING, and EJM LEASING,

LLC, appeared through its attorney of record; Defendant PO-TECH DIESEL, INC., appeared

through its attorney of record. All matters in controversy, legal and factual, were submitted to

the court for its determination. The court heard the evidence and arguments of counsel and

announced its decision for the Defendant.

The court orally RENDERED judgment for Defendant on June 20, 2017. This written judgment

memorializes that rendition.

IT IS accordingly ORDERED, ADJUDGED AND DECREED that the Plaintiff take nothing by

its suit.

All relief not expressly granted herein is denied.

Signed on this _____3rd_____ day of August, 2017.

_Guadalupe Rivera_
Presiding Judge